

# T. A. BLACKBURN LAW

### TYRONE A. BLACKBURN

———
MEMBER OF
NY & NJ BAR

———
FEDERAL MEMBERSHIP
EDNY, SDNY, & DNJ

———
1242 EAST 80ᵀᴴ STREET, 3ᴿᴰ FLOOR
BROOKLYN, NY 11236

January 22, 2026

The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Nantongo v. Nationwide Mortgage Bankers, Inc.*,

Case No. 1:22-cv-04974-MKB-VMS

**URGENT LETTER ADVISING THE COURT OF FRAUD UPON THE COURT AND REQUESTING IMMEDIATE JUDICIAL INTERVENTION**

Dear Chief Judge Brodie:

I write to Your Honor with profound regret and urgency to advise the Court of serious irregularities that have recently come to light in the above-captioned matter. These irregularities involve what appears to be forgery of client documents, fraud upon this Court, misrepresentation of settlement terms, and ongoing obstruction of justice by plaintiff's former counsel, Fred V. Charles, Esq., and his brother, Ralph Charles, a non-lawyer who is a federal employee with the United States Equal Employment Opportunity Commission (EEOC).

I recognize the gravity of bringing such allegations to the Court's attention, and I do so only after exhausting all reasonable efforts to obtain clarification and documentation from both Fred and Ralph Charles. The evidence now available demonstrates that the judgment entered by the Clerk of this court on December 9, 2024, was procured through fraud and misrepresentation, and that plaintiff Olivia Nantongo did not authorize or sign the acceptance of the Rule 68 offer of judgment that was filed with this court.

As a preliminary matter, I must clarify my extremely limited involvement in this case. Although I filed a notice of appearance on January 9, 2023, and appear on the docket as co-counsel


📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com



## T. A. BLACKBURN LAW

for Ms. Nantongo, I was never the lead counsel and was not involved in any substantive aspect of the litigation. Specifically, I had no involvement in:

- Mediation or settlement negotiations.
- Settlement conversations between defense counsel and Fred Charles.
- The acceptance of the offer of judgment.
- Communications with Ms. Nantongo concerning the status of her case.
- Discovery.
- Motion practice.
- Any other aspect of the substantive litigation.

My sole role in this case was to serve as a courtesy to Fred Charles, who suffers from a slight visual disability that requires him to wear prescription glasses and use specialized equipment to read fine print on documents. Additionally, Fred Charles' eyes tend to cross from time to time, and as a result of these slight visual impairments, he has developed significant low self-esteem issues that cause him to avoid public spaces and minimize in-person contact. He requested that I make in-person status conference appearances on his behalf when required by the court, and I agreed to do so as a professional courtesy. I performed this limited function in this case and several other cases Mr. Charles was handling.

I had no knowledge of the settlement negotiations, settlement terms, payment amounts, or scope of claims being resolved. I did not communicate with Ms. Nantongo about her case at any point during the litigation. All substantive legal work was performed exclusively by Fred V. Charles and his brother Ralph Charles.

## I.  HOW THE FRAUD WAS DISCOVERED
### A.  Ms. Nantongo's Initial Contact with Fred Charles (January 14, 2026)

On January 14, 2026, Ms. Nantongo, who currently resides abroad, contacted Fred Charles via text message, email, and telephone to inquire about the status of her sexual harassment case. According to Ms. Nantongo, she was under the impression that only her employment wage claims had been resolved and that her sexual harassment and gender-motivated violence claims against Nationwide Mortgage Bankers remained pending.

During a telephone conversation on January 14, 2026, Mr. Charles informed her for the first time that the $28,000 settlement payment she had received resolved both her employment wage claims AND her sexual harassment claims. Ms. Nantongo was shocked by this revelation and stated unequivocally:

## T. A. BLACKBURN LAW

"We did not communicate at all about this... it's a surprise to me. Honestly, it's a surprise."

She further stated:

"There's no way I would have accepted that amount for all the struggle I went through with a stupid company, all those individuals. No way. Sexual harassment. I mean, I had so much evidence."

When Ms. Nantongo requested her complete case file, including all settlement documents, emails, communications, and discovery materials, Mr. Charles promised, "Sure, yeah," and stated he would send the documents to her. **He never did**.

B.  The WhatsApp Group Chat (January 17, 2026)

After Fred Charles failed to provide the promised documents for three days, Ms. Nantongo created a WhatsApp group chat on January 17, 2026, that included Fred Charles, Ralph Charles, Ms. Nantongo, and me.  See **Attachment 1** (WhatsApp Messages).  In this group chat, Ms. Nantongo confronted Fred and Ralph about the status of her sexual harassment and gender-motivated violence claims and reiterated her request for her complete case file.

Ms. Nantongo's message in the WhatsApp group stated:

"I do not recall ever signing any settlement agreement closing out my sexual harassment case, and frankly, I do not recall signing any settlement documents for the employment case either. If my recollection is incorrect, then please immediately provide me with copies of every document that allegedly bears my signature and purports to settle either case."

This was the first time I learned that Ms. Nantongo had any additional claims or causes of action against Nationwide beyond the FLSA and NYLL wage claims reflected in the complaint. Ms. Nantongo immediately acknowledged in the chat that I had not been involved in the substantive litigation and had no access to her file.

As an officer of this court, I recognized my duty to assist Ms. Nantongo in obtaining answers to her legitimate inquiries. I informed Fred and Ralph that they needed to "compile her documents and email them to her NOW!"  I also created a Dropbox link and added Fred Charles, Ralph Charles, and Ms. Nantongo so there would be a centralized location for Fred and Ralph to upload all requested documents.

Instead of providing the documents or responding to Ms. Nantongo's direct questions, Fred Charles exited the WhatsApp conversation at 10:43 AM on January 17, 2026, without any response

**T. A. BLACKBURN LAW**

whatsoever.  See **Attachment 2** (screenshot showing Fred's exit from the group chat).  Ralph Charles similarly ignored all messages and provided no documents.

## II. WHAT I DISCOVERED UPON REVIEWING THE DOCKET

After Fred Charles's abrupt exit from the WhatsApp conversation, I downloaded all available documents from PACER and provided them to Ms. Nantongo.  This was the first time Ms. Nantongo had seen any of the court filings, including

- The Rule 68 Offer of Judgment.
- The purported acceptance of the offer of judgment.
- The Court's judgment.
- The Satisfaction of Judgment.

Ms. Nantongo was profoundly confused. She saw what appeared to be her signature on the Acceptance of Offer of Judgment filed on the docket, but she has no recollection of ever seeing or signing that document. Moreover, she had never spoken with Fred Charles about any settlement offer from the defendants, the acceptance of any offer, or the resolution of her case.

A. <u>How Ms. Nantongo Learned of the Settlement</u>

According to Ms. Nantongo, she first learned that her case had "settled" through a telephone call from Ralph Charles (Fred's brother, who is not a licensed attorney). Ralph called Ms. Nantongo one day and stated, "Your case settled for $28,000."  He then mailed her a check for that amount. There was no conversation at all with Fred Charles about the settlement.

Ms. Nantongo asked Ralph how much she needed to pay Fred Charles for his legal fees. Ralph responded, "Don't worry, Fred has already been paid."  This confused Ms. Nantongo because she had never signed a retainer agreement with Fred Charles. When she pressed Ralph about the fee amount Fred was paid, Ralph stated, "Oh, 10 or 15%; I don't remember."  Fred actually took 33.3% of the $40,000 settlement as detailed below.

Ms. Nantongo then asked Ralph whether she would have to pay taxes on the settlement. Ralph told her, "Don't worry about the taxes; they were covered by the company."

At no point did Fred Charles personally communicate with Ms. Nantongo about:

- The settlement negotiations.
- The terms of settlement.
- The claims that were being resolved.
- The amount of the settlement.
- His legal fees.



347-342-7432    tblackburn@tablackburnlaw.com    TABlackburnlaw.com

4

**T. A. BLACKBURN LAW**

- Tax implications.
- The need for her signature on any documents, etc.

### III. COMMUNICATIONS WITH DEFENSE COUNSEL

Based on my experience in settlement matters, I suspected that defense counsel likely obtained a comprehensive settlement agreement containing non-disclosure and confidentiality provisions. No defendant would pay $28,000 to settle employment claims without obtaining a broad release and confidentiality agreement.

On January 17, 2026, I reached out to counsel for defendants, Justin M. Reilly, Esq., and Victoria Spagnolo, Esq., and requested copies of all settlement documents.  See **Attachment 3** (Email to Defense Counsel).

Mr. Reilly responded and provided copies of three checks issued by Nationwide Mortgage Bankers on December 13, 2024:

| Payee | Amount | Description |
|---|---|---|
| Charles Law, P.C. | $12,000 | "NANTONGO & GRAHAM" |
| Olivia Nantongo | $28,000 | "NANTONGO" |
| Sharon Graham | $5,000 | "GRAHAM" |
| TOTAL | $45,000 | |

See **Attachment 4** (Check Copies).

I immediately followed up with Mr. Reilly and Ms. Spagnolo, requesting all documents provided to them from Fred Charles that may bear Ms. Nantongo's signature, including:

- Settlement agreements.
- Release agreements.
- IRS Form 1099.
- Any and all communications concerning the settlement between defendants and Fred Charles.

As of the date of this letter, defense counsel has not responded to this follow-up request.  Both Fred Charles and Ralph Charles were copied on all emails with defense counsel, and neither of them has responded or furnished any requested documents to Ms. Nantongo.

///

 347-342-7432    ✉ tblackburn@tablackburnlaw.com    🌐 TABlackburnlaw.com



## T. A. BLACKBURN LAW

## IV. EVIDENCE OF FRAUD UPON THE COURT

### A. Material Discrepancies Between Court Record and Actual Settlement

The evidence now available reveals material misrepresentations to this Court regarding the settlement:

**What This Court Was Told:**

1. Settlement Amount (Ms. Nantongo): $20,000, "inclusive of all unpaid wages, liquidated damages, statutory penalties, pre-judgment interest, and attorneys' fees and costs."
2. Settlement Amount (Sharon Graham): $3,500, "inclusive of all unpaid wages, liquidated damages, statutory penalties, pre-judgment interest, and attorneys' fees and costs."
3. Total Disclosed to Court: $23,500.
4. Claims Resolved: FLSA and New York Labor Law wage and hour claims only.

**What Actually Occurred:**

1. Actual Payment to Ms. Nantongo: $28,000 (not $20,000).
2. Actual Payment to Sharon Graham: $5,000 (not $3,500).
3. Separate Payment to Fred Charles: $12,000 (described as attorney fees, paid separately)
4. Total Actually Paid: $45,000
5. Claims Actually Resolved: Employment wage claims AND sexual harassment/gender-motivated violence claims (per Fred Charles's own admission during the January 14, 2026, telephone call).

### B. The Forged Signature

Ms. Nantongo states unequivocally that she does not recall ever signing the Acceptance of Offer of Judgment, does not recall ever signing any settlement agreement, never had any conversation with Fred Charles about accepting a settlement, and never authorized Fred Charles to settle her sexual harassment claims. She further states that she would never have accepted $28,000 to resolve all of her claims given the severity of the sexual harassment she allegedly endured. The signature on the acceptance of offer of judgement was a forgery.

### C. Fred Charles's Own Admissions

During the telephone call between Ms. Nantongo and Fred Charles on January 14, 2026, Mr. Charles made several damning admissions:

Fred Charles admitted the settlement covered "both" cases, stating "*That was for both*" in response to Ms. Nantongo's question. When Ms. Nantongo asked how he could have never explained this to her, Mr. Charles responded weakly: "*I thought I did.*" Ms. Nantongo immediately contradicted him: "*No.*"

 



## T. A. BLACKBURN LAW

When Ms. Nantongo confronted the lack of communication, Mr. Charles stated: "*I don't know what the miscommunication is*." Ms. Nantongo responded sharply: "*What do you mean? Miscommunication? We did not communicate at all about this*."

Most damaging, Fred Charles promised to send the file but never did. When asked "*Can you send me my entire file on my case?*" Mr. Charles replied: "*Sure, yeah*." As of January 22, 2026—eight days later—Fred Charles has provided not a single document to his former client.

### D.  Consciousness of Guilt: Fred Charles's Evasion

When directly confronted by his client in the WhatsApp group chat with her statement that she did not recall signing settlement documents, a legitimate attorney would immediately provide copies of the signed settlement documents, explain the settlement process, address the client's concerns, and produce the retainer agreement showing the fee arrangement. Instead, Fred Charles exited the WhatsApp conversation without any response and has maintained complete silence for five days. This conduct is only explicable if Mr. Charles knows he cannot produce legitimate documents bearing Ms. Nantongo's authentic signature.

## V.  RALPH CHARLES'S ROLE AND EEOC MISCONDUCT SCHEME

Ralph Charles's involvement in this matter raises additional serious concerns. Ralph Charles is not a licensed attorney, yet he informed Ms. Nantongo of her case settling, mailed her the $28,000 settlement check, discussed legal fee arrangements with her, advised her about tax implications, represented that Fred Charles had "already been paid," and acted as an intermediary in legal matters without proper authorization.

### A.  Information Concerning Ralph Charles's EEOC Employment

Upon information and belief, Ralph Charles is currently suspended from his employment with the EEOC pending investigation into a fraudulent self-dealing scheme. According to information provided to me, Mr. Ralph Charles allegedly created a fraudulent "ADR Attorney Referral Program" through the Alternative Dispute Resolution mediation unit where he worked at the EEOC. Attorneys who received referrals from Ralph Charles were allegedly required to pay the "ADR Attorney Referral Program" a percentage fee based on whatever the attorney earned from retained complainants upon conclusion of their cases. Ralph Charles allegedly referred EEOC complainants to his brother Fred Charles and allegedly worked on cases alongside Fred Charles that Ralph had referred from the EEOC.

 



# T. A. BLACKBURN LAW

Upon information and belief, Ralph Charles allegedly served as the EEOC mediator on cases that he had referred to attorneys in his referral program, including cases he referred to his brother Fred, without disclosing this conflict of interest to defense counsel for the respondents. By serving as mediator on cases he had referred, Ralph Charles allegedly gained access to confidential "mediator eyes only" disclosures from respondents, which he could then use to provide complainants and their attorneys (including his brother) with an unfair advantage. Ralph Charles, a non-lawyer, allegedly presented himself as a licensed attorney on multiple occasions.

If these allegations are true, Ralph Charles's conduct represents a massive breach of public trust, conflicts of interest, fraud, and unauthorized practice of law. His involvement in Ms. Nantongo's case—delivering settlement checks, discussing fees, and advising on legal matters—appears to be consistent with this pattern of misconduct.

## VI. REQUESTS FOR RELIEF

Given the gravity of the fraud perpetrated upon this Court and the ongoing obstruction by Fred Charles and Ralph Charles, Ms. Nantongo respectfully requests that the Court reinstate this case to the active docket and vacate the judgment entered on December 9, 2024 as to Ms. Nantongo on the ground that it was procured through fraud, forgery, and material misrepresentation under Federal Rule of Civil Procedure 60(b)(3). Ms. Nantongo further requests that the Court vacate the Satisfaction of Judgment filed on December 17, 2024, as fraudulent.

Ms. Nantongo respectfully requests that the Court issue an Order to Show Cause directed to Fred V. Charles, Esq., and Ralph Charles requiring them to appear before this Court and show cause why they should not be held in contempt of court, sanctioned under Federal Rule of Civil Procedure 11, required to immediately surrender all documents related to Ms. Nantongo's case's, referred for criminal prosecution, and referred to the Attorney Grievance Committee.

The Court's assistance is urgently needed to compel Fred V. Charles and Ralph Charles to immediately produce Ms. Nantongo's complete case file, all settlement agreements, releases, and related documents, all communications with defense counsel regarding settlement, all communications with Ms. Nantongo, the original document bearing Ms. Nantongo's signature on the Acceptance of Offer of Judgment, the retainer agreement between Ms. Nantongo and Fred Charles (if one exists), all financial records showing disbursement of settlement funds, and all IRS



## T. A. BLACKBURN LAW

Forms 1099 or other tax documents. Given their continued refusal to cooperate despite repeated demands, a court order with a specific deadline (within 48 hours) appears to be the only means of obtaining these essential documents.

Ms. Nantongo further requests that the Court refer Fred V. Charles to the Attorney Grievance Committees for both the Eastern District of New York and the Southern District of New York for investigation of forgery and fraud upon the court, failure to communicate with client (NYRPC 1.4), settling claims without client authorization (NYRPC 1.2), failure to return client property (NYRPC 1.16(d)), conduct involving dishonesty, fraud, deceit, or misrepresentation (NYRPC 8.4(c)), and misrepresentation of settlement terms to the Court.

Given the potential criminal nature of the conduct at issue, Ms. Nantongo respectfully requests that the Court refer this matter to the United States Attorney's Office for the Eastern District of New York for criminal investigation of potential violations of 18 U.S.C. § 1001 (false statements to a federal court), 18 U.S.C. § 1621 (perjury), 18 U.S.C. § 1623 (false declarations before a court), New York Penal Law § 170.10 (forgery in the second degree), and New York Penal Law § 190.65 (offering a forged instrument). Ms. Nantongo also requests that the Court refer this matter to the Kings County District Attorney's Office for investigation of state criminal violations.

With respect to Ralph Charles's alleged misconduct, Ms. Nantongo respectfully requests that the Court refer his conduct to the EEOC Office of Inspector General, the Office of Special Counsel (for federal employment ethics violations), and the United States Attorney's Office (for investigation of the EEOC referral scheme and unauthorized practice of law).

To ensure a full and fair resolution of these issues, Ms. Nantongo requests that the Court schedule an evidentiary hearing at which Ms. Nantongo can testify regarding her lack of knowledge and authorization, Fred Charles can be examined under oath regarding his conduct and the statements he made to Ms. Nantongo during their January 14, 2026, telephone conversation, Ralph Charles can be examined under oath regarding his involvement, and a handwriting expert can testify regarding the authenticity of the signature on the Acceptance of Offer of Judgment.

Finally, Ms. Nantongo requests that the Court issue an immediate preservation order requiring Fred Charles, Ralph Charles, and defense counsel to preserve all documents,

📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

9

**T. A. BLACKBURN LAW**

communications, electronic records, and physical evidence related to this matter pending resolution.

## VII.    ATTACHMENTS

The following documents are attached and incorporated by reference:

- <u>Attachment 1</u>: WhatsApp messages from January 17, 2026, showing Ms. Nantongo's statements that she did not sign settlement documents and demanding her file.
- <u>Attachment 2</u>: Screenshot showing Fred Charles exited the WhatsApp group chat on January 17, 2026, at 10:43 AM without responding.
- <u>Attachment 3</u>: Email correspondence between undersigned counsel and defense counsel Justin M. Reilly and Victoria Spagnolo requesting settlement documents.
- <u>Attachment 4</u>: Copies of three checks dated December 13, 2024, totaling $45,000 ($12,000 + $28,000 + $5,000).
- <u>Attachment 5</u>: Affidavit of Olivia Nantongo.

## VIII.    CONCLUSION

Your Honor, I recognize the extraordinary nature of the relief requested in this letter. I do not bring these allegations lightly. However, the evidence is overwhelming and irrefutable.

I stand ready to provide any additional information or documentation the Court may require. I apologize for the length of this letter, but the complexity and seriousness of the issues demanded a comprehensive explanation.

Kind regards,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
