

# T. A. BLACKBURN LAW

TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL DISTRICT COURT MEMBERSHIP
EDNY, NDNY, SDNY & DNJ

FEDERAL APPELLATE COURT MEMBERSHIP
SECOND CIRCUIT

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

February 8, 2026

**Via ECF**
Hon. Margo K. Brodie
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Nantongo et al. v. Nationwide Mortgage Bankers*
1:22-cv-4974 (MKB)(VMS)

Dear Judge Brodie:

I respectfully submit this reply on behalf of Ms. Olivia Nantongo in response to the letter filed by Ralph Charles (ECF No. 55), Fred Charles, Esq. (ECF No. 54), and Defendant's Memorandum of Law in Opposition (ECF No. 53). In opposing Ms. Nantongo's motion, Mr. Charles does not dispute the central factual allegation that Ms. Nantongo's signature appears on settlement documents she never saw, reviewed, or authorized; instead, he relies on timeliness arguments, personal attacks on undersigned counsel, and a fabricated case citation, while pointedly refusing to provide this Court or Ms. Nantongo with the actual settlement agreement or her complete case file

As a threshold matter, Mr. Charles's submission was filed on February 7, 2026, in violation of Your Honor's order requiring a response by February 6, 2026, and it devotes the bulk of its pages to ad hominem attacks rather than addressing the substance of Ms. Nantongo's motion. More importantly, Mr. Charles's filing: (i) fails to attach the purported settlement agreement or any evidence that Ms. Nantongo ever received or signed it, (ii) offers no explanation for how her signature appears on documents she denies signing, and (iii) cites a non-existent Second Circuit decision as authority for his timeliness argument. The remainder of this reply addresses these defects in order: first, Mr. Charles's failure to confront the forgery and file-withholding allegations; second, his use of fabricated and misleading materials; and third, the legal bases on which Ms. Nantongo's motion remains timely and properly before the Court.

Finally, I am 100% certain that Fred and/or his brother Ralph Charles forged Ms. Nantongo's settlement documents. So certain that **I am willing to personally pay a $10,000.00 sanction to Fred Charles if he produces the original wet ink signature of every settlement document that purports to bear Ms. Nantongo's signature. I guarantee he will NOT be able to do it**.

Ms. Nantongo respectfully asks that the Court hold a show cause hearing and require Fred and Ralph Charles to appear with the original wet ink signature copies of all settlement documents that purport to bear Ms. Nantongo's signature.

📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com



## T. A. BLACKBURN LAW

I.      **Mr. Charles's Response Fails to Address the Substance of Ms. Nantongo's Motion**

Rather than address the substance of Ms. Nantongo's motion—namely, that settlement documents were executed without her knowledge or informed consent, and that her signature was forged on those documents—Mr. Charles devotes approximately ten of his thirteen paragraphs to personal attacks against undersigned counsel. Notably absent from his response is any attempt to address the actual allegations raised by Ms. Nantongo. He does not produce the settlement documents for this court's review. He does not produce copies of those documents for Ms. Nantongo's review. He does not explain how Ms. Nantongo's signature came to appear on documents she claims she never signed. He does not address his continued refusal to turn over Ms. Nantongo's complete case file despite repeated demands. Instead, he has chosen to make this proceeding about undersigned counsel in a transparent effort to distract this Court from the serious allegations of forgery and fraud at the center of Ms. Nantongo's motion.

Furthermore, it is telling that neither Mr. Charles nor counsel for Defendant Nationwide provided this Court with a copy of the settlement agreement that Ms. Nantongo allegedly signed. Between the two opposition submissions, not a single exhibit contains the actual settlement agreement. Mr. Charles did not attach an email showing the agreement was transmitted to Ms. Nantongo. He did not provide an Adobe Sign or DocuSign signature receipt. He did not produce a delivery confirmation, an acknowledgment of receipt, or any other evidence whatsoever demonstrating that Ms. Nantongo saw, reviewed, was provided, acknowledged, or signed the settlement agreement. This is because no such evidence exists. If Ms. Nantongo had in fact reviewed and signed the settlement agreement, producing that proof would have been the simplest and most effective way to defeat her motion. The fact that both Mr. Charles and Defendant's counsel chose instead to argue procedural technicalities—while conspicuously omitting the one document that could resolve this dispute—speaks directly to the merits of Ms. Nantongo's claims.

II.     **Mr. Charles Cited a Fabricated Case to This Court**

Mr. Charles's lack of candor extends beyond his misleading exhibits. In his letter, Mr. Charles cites "*Mpala v. Segarra*, 715 Fed. Appx. 84, 85 (2d Cir. 2018)" for the proposition that "plaintiff failed to bring a Rule 60(b)(1) motion within a reasonable time even though it was brought within one year." This case does not exist.

Undersigned counsel spent over two hours attempting to locate this citation across every available legal database. The case "*Mpala v. Segarra*" does not appear in the Federal Appendix, Westlaw, LexisNexis, or any other reporter. The closest case matching the cited reporter is *Johnson v. Turnbill*, 715 Fed. Appx. 84 (2d Cir. 2018), which addresses an excessive force claim based on tight handcuffing and remands for further proceedings. See **Blackburn Dec. Ex H** (copy of *Johnson v. Turnbull* attached hereto). *Johnson v. Turnbill* does not discuss Rule 60(b), timeliness, or the reasonable-time requirement. It has nothing whatsoever to do with the proposition for which Mr. Charles cited it.

By attributing to a nonexistent case a holding that a Rule 60(b)(1) motion was untimely despite being filed within one year, Mr. Charles has fabricated legal authority and presented it to this Court as binding precedent. This is a violation of his duty of candor under Rule 3.3 of the New York Rules of Professional Conduct, which requires that a lawyer shall not "make a false statement of fact or law to a tribunal." NY RPC 3.3(a)(1). It is also a violation of Federal Rule of Civil

347-342-7432          tblackburn@tablackburnlaw.com          TABlackburnlaw.com



## T. A. BLACKBURN LAW

Procedure 11(b)(2), which requires that legal contentions be "warranted by existing law" and not based on fabricated authority.

It is deeply ironic that Mr. Charles devoted three paragraphs of his response to accusing undersigned counsel of past issues with case citations while simultaneously submitting a fabricated citation to this very Court in the same filing. This Court should take Mr. Charles's own misconduct into account when evaluating his credibility and his attacks on undersigned counsel.

It is also important to note that, beginning on January 17, 2026, undersigned counsel repeatedly contacted Nationwide's counsel by email to ask a simple, direct question: whether they had ever received a settlement agreement or any other document bearing Ms. Nantongo's signature, and to respectfully request copies of all such documents in their possession. See **Blackburn Dec. Ex I** (email chain attached hereto). Those inquiries were ignored. Nationwide did not answer the question, did not provide a single document bearing Ms. Nantongo's signature, and instead attempted to bury its response in a footnote in its opposition papers. This is bad faith at its core. Nationwide's counsel knew, or at a minimum had strong reason to suspect, that Ms. Nantongo had not signed the settlement documents, yet chose neither to engage with undersigned counsel to get to the bottom of the fraud nor to alert the Court. They now seek to capitalize on that fraud to secure a windfall for their client. In the interest of justice and the integrity of these proceedings, this Court cannot allow that result.

### III.    Ms. Nantongo's Motion Is Not Time-Barred

Both Mr. Charles and Defendant argue that Ms. Nantongo's motion is untimely under Rule 60(c)(1)'s one-year limitation for Rule 60(b)(3) motions. This argument fails for multiple reasons.

A.    <u>This Court Has Inherent Power Under Rule 60(d)(3) to Set Aside a Judgment Procured by Fraud on the Court, and That Power Has No Time Limitation.</u>

Ms. Nantongo's motion is properly brought under Rule 60(d)(3), which provides that the Federal Rules "not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Unlike Rule 60(b)(3), Rule 60(d)(3) is subject to no statute of limitations. The Supreme Court in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), held that courts have inherent power to investigate and set aside judgments obtained by fraud, and that this power is not constrained by time limitations. The Court further held that even where the moving party arguably failed to exercise due diligence in uncovering the fraud, the public interest in the integrity of the judicial process overrides concerns of finality.

Fraud on the court requires (1) an intentional fraud; (2) by an officer of the court; (3) directed at the court itself; (4) that in fact deceives the court. *See Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (holding that when an attorney departs from his duty of candor to the court, "he perpetrates a fraud upon the court"). Fred Charles is an attorney admitted to practice before this Court—he is an officer of this Court. If, as Ms. Nantongo alleges, Mr. Charles forged her signature on settlement documents and filed those documents on this court's docket, that conduct constitutes the paradigmatic fraud on the court: an officer of the

**T. A. BLACKBURN LAW**

court filing fabricated documents to deceive the court into entering a judgment based on false instruments.

Courts have recognized that the filing of forged documents with the court is among the most egregious forms of fraud on the court. *See, Flava Works, Inc. v. Momient*, No. 13-cv-1519 (N.D. Ill. 2014) (describing the filing of documents bearing a transposed genuine signature onto a fabricated document as "the most egregious fraud on the court that this Court has encountered"). *See also, In re Old Carco LLC*, 423 B.R. 40, 54 (Bankr. S.D.N.Y. 2010) ("Fraud on the court may be present if a party inserts a false or forged document into the record"; such fraud "is limited to the type of fraud that seriously affects the integrity of the adjudicatory process" and "would justify a finding of such fraud only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury, or fabrication of evidence by counsel."). The fact that this fraud was committed by an attorney—the very person entrusted by both the client and the Court to act with integrity—elevates this conduct beyond ordinary party misconduct into a fraud that undermines the integrity of the judicial process itself.

B.    Even Under Rule 60(b)(3), the limitations period runs from Discovery of the Fraud.

Even if this Court were to analyze timeliness under Rule 60(b)(3), the one-year period should be measured from when Ms. Nantongo discovered the fraud—not from the date judgment was entered. Ms. Nantongo could not have discovered that her signature was forged without seeing the actual settlement documents, and Mr. Charles has refused to produce them despite repeated demands from both Ms. Nantongo directly and from undersigned counsel.

In *Soto v. County of Westchester*, No. 14-cv-7566 (S.D.N.Y. 2018), the court considered a scenario where a plaintiff only became aware of his attorney's unauthorized settlement of his case when the attorney's fraud was publicly revealed years later. The court recognized that the date of discovering the fraud—not the date of judgment—is the critical factor in evaluating timeliness. Here, Ms. Nantongo first contacted Mr. Charles in January 2026, requesting information about her sexual harassment claims. It was only through that inquiry and Mr. Charles's subsequent refusal to provide any case file documents that Ms. Nantongo came to understand the full scope of what had occurred.

The suggestion that receipt of ECF notifications constitutes knowledge of fraud is meritless. Automated docket notifications that a "Satisfaction of Judgment" has been filed do not alert a client—or even counsel—to the fact that the underlying settlement documents bear a forged signature.

C.    Mr. Charles Cannot Conceal the Fraud and Then Argue the Victim Waited Too Long.

Mr. Charles's timeliness argument is particularly unconscionable given that he is the one concealing the very evidence that would have allowed Ms. Nantongo to discover the fraud sooner. He has refused to turn over the settlement agreement. He has refused to turn over Ms. Nantongo's complete case file. He has refused to produce any evidence that Ms. Nantongo ever saw or signed the documents in question. A party cannot commit fraud, actively conceal the evidence of that fraud by refusing to produce the client file in violation of NY RPC 1.16(d) and 1.15(c)(4), and then argue that the victim of that fraud waited too long to seek relief.

347-342-7432    tblackburn@tablackburnlaw.com    TABlackburnlaw.com



## T. A. BLACKBURN LAW

D. <u>In the Alternative, Extraordinary Circumstances Warrant Relief Under Rule 60(b)(6).</u>

Should this Court find that Rule 60(b)(3) is time-barred and that the conduct does not rise to fraud on the court under Rule 60(d)(3), Ms. Nantongo respectfully submits that relief is warranted under Rule 60(b)(6), which permits relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) is not subject to the one-year limitation; it requires only that the motion be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1).

Ms. Nantongo acknowledges that the Supreme Court recently reaffirmed in *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 145 S.Ct. 1612 (2025), that relief under Rule 60(b)(6) requires "extraordinary circumstances," and that this standard is "essential if the finality of judgments is to be preserved." *Id.* at 1620 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). Ms. Nantongo submits that the forgery of a client's signature on settlement documents filed with a federal court by her own attorney—the very officer of the court entrusted with protecting her interests—constitutes extraordinary circumstances by any measure. This is not a case where a movant made a "free, calculated, deliberate choice" and now seeks to undo the consequences. *Ackermann v. United States*, 340 U.S. 193, 198 (1950). Ms. Nantongo made no choice at all. Her signature was forged. She was not consulted. She did not authorize the settlement. And when she sought answers, her former counsel refused to produce the case file.

As Justice Jackson observed in *BLOM Bank*, courts "should refrain from reflexively denying reopening" where the movant is "completely without fault for his or her predicament." 605 U.S. at 221 (Jackson, J., concurring in part). Ms. Nantongo is without fault. She did not abandon her claims. She did not make a strategic litigation choice that backfired. Her case was settled without her knowledge by an attorney who forged her signature and then concealed the evidence. If these are not "extraordinary circumstances," it is difficult to imagine what would be.

## IV.    **Response to Defendant's Arguments**

A. <u>Rule 60(d)(3) Eliminates the "Opposing Party" Limitation.</u>

Defendant argues that Rule 60(b)(3) applies only to fraud by an opposing party and that Ms. Nantongo's allegations are directed solely at her own attorney. Even assuming this characterization is correct for purposes of Rule 60(b)(3), it is irrelevant under Rule 60(d)(3). This Court's inherent power to set aside a judgment for fraud on the court is not limited to fraud committed by an opposing party. It reaches fraud by any officer of the court—including the movant's own counsel. *See Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). If Mr. Charles forged Ms. Nantongo's signature on documents filed with this Court, that is a fraud on the Court itself, and the identity of the perpetrator's relationship to the movant is immaterial.

Moreover, Defendant cannot disclaim involvement while retaining the benefit of the allegedly fraudulent judgment. Defendant is the direct beneficiary of a judgment that resolved all claims against it—including sexual harassment claims that were never filed and that Ms. Nantongo never authorized to be settled. Whether this is characterized as an attorney-client dispute does not diminish this Court's inherent interest and obligation to ensure the integrity of its own proceedings. *See Custodio v. American Chain Link & Const. Inc.*, No. 12-cv-4118 (S.D.N.Y. 2014) (granting Rule 60(b) relief where a party claimed it never signed the settlement agreement).

📞 347-342-7432    ✉ tblackburn@tablackburnlaw.com    🌐 TABlackburnlaw.com



# T. A. BLACKBURN LAW

B. *Mei Xing Yu* Does Not Excuse the Absence of Client Authorization.

Defendant's reliance on *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019), is misplaced. *Mei Xing Yu* holds that judicial approval is not required for Rule 68 offers of judgment settling FLSA claims. It does not hold—nor could it—that a client's authorization is unnecessary or that a Rule 68 acceptance bearing a forged signature constitutes a valid acceptance. The procedural legitimacy of the Rule 68 mechanism does not cure the fundamental defect that Ms. Nantongo never authorized or signed the settlement documents. A forged instrument is void regardless of the procedural vehicle through which it is filed.

Furthermore, Defendant's own submission reveals that Ms. Nantongo's non-filed sexual harassment claims were purportedly resolved through a separate settlement agreement—not through the Rule 68 Offer of Judgment. *Mei Xing Yu* has no application to that separate agreement whatsoever. Defendant has not produced this settlement agreement, has not demonstrated that Ms. Nantongo signed it, and has not offered any evidence that she was even aware of its existence.

C. ECF Notifications Do Not Constitute Knowledge of Fraud.

Defendant's argument that undersigned counsel received ECF notifications and therefore the delay is inexcusable conflates notice of routine docket activity with notice of fraud. An automated email notification that a "Satisfaction of Judgment" has been filed does not alert anyone—counsel or client—that the underlying settlement documents bear a forged signature. Ms. Nantongo could not have discovered the forgery without seeing the actual settlement documents, and Mr. Charles has refused to produce them despite repeated demands. Defendant's argument effectively punishes Ms. Nantongo for not discovering a fraud that was actively concealed from her by her own former counsel.

## V. The Unaddressed Issues

The real issues remain simple and unaddressed by Mr. Charles:

1. Ms. Nantongo's signature appears on settlement documents she claims she never signed.
2. Neither Mr. Charles nor counsel for Defendant has produced the settlement agreement or any evidence that Ms. Nantongo ever saw, reviewed, acknowledged, or signed it.
3. Mr. Charles has refused to return Ms. Nantongo's complete case file despite multiple demands from both Ms. Nantongo directly and from undersigned counsel—in violation of NY RPC 1.16(d) and 1.15(c)(4).
4. Mr. Charles's brother, Ralph Charles, a non-attorney, appears to have played a central role in the handling and settlement of Ms. Nantongo's case, including contacting her directly to inform her the case had settled and mailing her a check.
5. Mr. Charles cited a fabricated case—"Mpala *v. Segarra*"—to this Court in support of his timeliness argument, in violation of his duty of candor under NY RPC 3.3(a)(1) and Fed. R. Civ. P. 11(b)(2).

In addition to the foregoing, neither Mr. Charles nor his brother, non-lawyer Ralph Charles, provided this Court with a sworn affidavit under penalty of perjury denying Ms. Nantongo's claims. This absence is noteworthy. Ms. Nantongo submitted a sworn affidavit in support of her motion, placing her freedom on the line by attesting under penalty of perjury that she did not sign



## T. A. BLACKBURN LAW

the settlement documents and did not authorize the settlement of her sexual harassment claims. One would think that Mr. Charles, as an officer of this Court, would have no difficulty doing the same—if he were telling the truth. His decision, and Ralph Charles's, to respond with unsworn letters filled with personal attacks against undersigned counsel, rather than a sworn denial of the forgery allegations, invites the obvious inference that neither of them can deny Ms. Nantongo's claims under oath.

Furthermore, as evidenced by the recorded January 14, 2026, telephone call between Ms. Nantongo and Mr. Charles, Mr. Charles can be heard struggling to answer Ms. Nantongo's inquiries concerning her sexual harassment claims. During the call, Mr. Charles asks Ms. Nantongo, "Did you speak with Ralph?"—directing his own client to his non-lawyer brother for answers about her case. This is a remarkable admission. It indicates that Ralph Charles, a non-attorney, possessed superior knowledge over Ms. Nantongo's claims and case than Mr. Charles himself—the attorney of record. This is consistent with Ms. Nantongo's position that Ralph Charles played a central and unauthorized role in the handling and disposition of her case and raises serious concerns about the unauthorized practice of law. Ms. Nantongo is prepared to provide this Court with the full four-minute audio recording of this call for the Court's review.

Ralph Charles's February 8, 2026, letter (ECF No. 55) only underscores these concerns. He admits that he personally delivered the $28,000 settlement check to Ms. Nantongo, confirming his direct involvement in the settlement process despite not being counsel of record, yet—like his brother—he does not attach a single settlement document bearing Ms. Nantongo's signature and does not submit a sworn denial of the forgery allegations. His letter consists largely of collateral attacks on undersigned counsel and recycled allegations from unrelated matters, and it does not address whether Ms. Nantongo actually signed or authorized any settlement documents in this case. The focus of these proceedings must remain on the integrity of the judgment and the authenticity of the documents filed with this Court, not on character attacks against counsel.

For all of the foregoing reasons, Ms. Nantongo respectfully requests that the Court (i) grant her motion to vacate the judgment; (ii) set this matter for an evidentiary/show-cause hearing at which Fred and Ralph Charles are required to appear with the original wet-ink versions of any settlement documents that purport to bear Ms. Nantongo's signature; (iii) order Mr. Charles to produce the complete settlement documents and Ms. Nantongo's entire case file for the Court's in camera review; and (iv) grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ *Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

Cc:
All counsel of record via ECF.