UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLIVIA NANTONGO,<br><br>                            Plaintiff,<br><br>v.<br><br>NATIONWIDE MORTGAGE<br>BANKERS, INC.,<br><br>                            Defendant. | 22-cv-04974 (MKB)(VMS)<br><br>**DECLARATION OF<br>TYRONE A. BLACKBURN, ESQ.** |

I, Tyrone A. Blackburn, Esq., declare pursuant to 28 U.S.C. § 1746:

1. I am counsel for Plaintiff Olivia Nantongo in this action. I submit this declaration in further support of Ms. Nantongo's motion to vacate and in response to the letters filed by Fred V. Charles, Esq. (ECF No. 54), Ralph Charles (ECF No. 55), and Defendant's opposition (ECF No. 53).

2. Unless otherwise stated, the facts set forth below are based on my personal knowledge.

I.    <u>Nationwide Litigation</u>

3. As I stated in my prior declaration, I never participated in any aspect of the *Nantongo v. Nationwide* litigation aside from filing a notice of appearance in the case for the SOLE purpose of making in-person appearances on behalf of Fred Charles because of his "disability."

4. If the court reviews the docket, the attendance record for all court conferences, and the attendance record for the mediation, I was not present.

5. Furthermore, absent the emails I sent to Nationwide's counsel requesting a copy of all documents in his possession that have Ms. Nantongo's signature, I was never part of any email with defendant's counsel concerning any matter in the underlying *Nantongo v. Nationwide* litigation.

6. Out of fear and desperation, Fred and Ralph Charles blatantly lied to the court. They were hopeful that the Court would not order them to turn over the settlement documents and appear at a show cause hearing to explain why they cannot produce the original wet ink signature settlement document or any communication (email, text message, etc.) that shows them providing Ms. Nantongo with a copy of the settlement agreement, offer of judgment, and 1099 form for her review and signature.

7. It is clear that Ralph and Fred Charles took advantage of Ms. Olivia Nantongo, an African national who is not knowledgeable of the United States justice system. They lied to Ms. Nantongo, telling her that her case was settled, and delivered her, as admitted by Ralph Charles, a check for $28,000.

II.    <u>Fred Charles's Cropped Text Messages</u>

8. In his February 7, 2026, letter, Fred attaches a cropped screenshot of a text exchange from an unrelated class action, *Muhammad et al. v. Alto Pharmacy, LLC, et al.*, 23-cv-11315, and then describes my message, "Laugh today, cry tomorrow," as a "chilling" "direct threat."

9. That group text thread was between me, Fred, and our clients in the Alto Pharmacy matter. In that exchange, I first demanded that Fred file his notice of withdrawal from the class

case, but he refused and continued to allow misconduct that exposed our clients to risk. After he finally withdrew, I thanked him and asked him to send me his hours so I could ensure he was paid for the work he had done on the case. A true and correct screenshot of this thread, showing the demand to withdraw, the thank you, and the request for his hours, is attached as **Exhibit A**.

10. In response to my request for his hours so that he could be compensated, Fred sent a laughing "HAHA" reaction. The "Laugh today, cry tomorrow" text came directly after that reaction and was plainly a colloquial response to his decision to mock my attempt to ensure he was paid, not any threat. Exhibit A shows that full context—the demand that he withdraws, my thank-you when he did, my request for his hours, and his "HAHA" reaction followed by my "Laugh today, cry tomorrow" message.

11. Fred's choice to crop the screenshot and present only the "Laugh today, cry tomorrow" line strips away that context and misleads the Court about the nature of the exchange. It is of a piece with the larger problem before the Court: selective use of the record to avoid confronting how Ms. Nantongo's signature came to appear on settlement documents she never signed.

III.    Communications About Ms. Nantongo's Case

12. On January 18, 2026, after Ms. Nantongo retained my firm, I emailed Fred and Ralph. I explained that Olivia had been trying to obtain her case evidence, files, and correspondence from the Nationwide litigation since January 14, 2026; that Fred had ignored her; and that Ralph had read her WhatsApp messages but refused to respond. I advised that I created a secure link and expected them to upload the requested documents.

13. On January 19, 2026, I emailed them again, attaching copies of the cashed checks from the Nationwide matter that was provided to me by Nationwide's counsel.  Included was a $12,000 check payable to Fred that reflects one-third of a $40,000 payment. I asked them to provide the retainer agreement that Olivia supposedly signed, authorizing Fred to take one-third of her recovery. They have never produced any such agreement.

14. On January 22, 2026, I emailed Fred and Ralph to inform them that I had filed Olivia's motion papers, including her sworn declaration, and that I would be filing a bar complaint against Fred for his failure to turn over a client's files. That email is part of the same chain, which is attached as **Exhibit B**.

15. These communications show that Olivia herself initiated efforts to get her file and understand what happened to her sexual harassment claim, that Fred and Ralph ignored her, and that my involvement began only after they refused to respond to her direct requests.

IV.    Ralph Charles's Unsigned Letter

16. Ralph's February 8, 2026, unsigned letter is almost entirely personal attacks on me. He does not say that he witnessed Olivia sign any settlement agreement, does not attach any settlement document bearing her signature, and does not submit a sworn declaration denying her allegation that her signature was forged.

17. Ralph, however, admits that he personally delivered the $28,000 settlement check to Olivia "as a courtesy," rather than mailing it, even though he is not counsel of record. He is a non-lawyer employed by the EEOC. That admission supports Olivia's account that he played a direct, unauthorized role in handling and disbursing her settlement proceeds.

18. Ralph claims that this case is "a Blackburn initiative" and suggests Olivia is being used as a vehicle for my supposed "campaign" against him. The email chain in **Exhibit B** shows the opposite: Olivia first tried to obtain her file from Fred and Ralph; they ignored her, and only then did she retain me to investigate what happened, obtain her documents, and address the forgery issues.

19. Ralph also blames me for the EEOC's Office of Inspector General's decision to investigate him and the fictitious "ADR Attorney Referral Program." Ralph would refer pro se complainants whose cases he mediated to attorneys. Ralph would then mediate the cases.

20. Ralph blames me for his decision to implement a fraudulent attorney referral program through the ADR Department, where Ralph works as a mediator. Ralph intentionally misrepresented that the EEOC requires a 10% referral fee from the proceeds the lawyer obtained from the referred cases. Ralph never disclosed to the attorneys that the EEOC did not have an ADR Attorney Referral program, and he definitely did not disclose that the EEOC does not charge a fee for attorney referrals.

21. To make matters worse, upon information and belief, Ralph would mediate the cases he referred through the fraudulent attorney referral program and obtain confidential "mediator-eyes-only" information from the employer respondents, share that information with the complainant and the attorney whom he referred the complainant to, all while never disclosing to the employer respondent that he had a personal financial interest in the outcome of the mediation.

22. Upon information and belief, Ralph never disclosed to the pro se complainants that he had a financial interest in the outcome of the mediation.

23. Recently, I learned that Ralph attempted to use his position as a US government employee to sell access to President Donald Trump for $375,000 per introduction to several wealthy African businesspeople. These individuals are willing to provide affidavits under penalty of perjury to evidence this fact.

24. Ralph blames me for his current investigation, but I did not tell him to take his US government-issued laptop and other sensitive equipment and travel overseas to third-world countries without the EEOC's knowledge or consent. I did not tell Ralph to use multiple VPNs to hide his true location from his supervisors at the EEOC while he was supposed to be working from home or, allegedly, caring for his elderly parents.

V.   Granger Lawsuit, Media, and Mental-Health Letter

25. Ralph attaches, as Exhibit A to his letter, a pro se complaint filed by an individual named Myori Granger in the Southern District of New York, along with other materials. That action has nothing to do with Olivia, Nationwide, or this case.

26. The Granger suit was dismissed sua sponte by the court. I was never served with that complaint, never mailed a copy, and did not learn of its existence through ordinary service or notice. I first became aware of it only after it was later repackaged and circulated as an attachment in unrelated litigation as part of a smear campaign.

27. Whatever was alleged in that dismissed complaint has never resulted in any finding of liability or wrongdoing by me and is irrelevant to the question before this Court: whether Olivia actually signed or authorized the settlement documents in this matter. Ralph's decision to attach these pleadings rather than provide a sworn denial of the forgery allegations or produce the settlement agreement underscores that his submission is intended to distract from the core issues.

28. Ralph also attaches, as Exhibit B to his letter, a December 3, 2025, letter I sent to Judge Jamel K. Semper in the District of New Jersey, in which I informed the court that, following the deaths of multiple people close to me and a series of security incidents connected to high-profile litigation, I was experiencing depression and anxiety and was taking steps to transition certain cases to new counsel.

29. That letter was submitted to Judge Semper out of a sense of honesty and professional responsibility. It has no bearing on whether Olivia's signature was forged on settlement documents here. Using that confidential notification about grief and mental health as a weapon in an unrelated matter does nothing to answer the straightforward questions raised by Olivia's motion.

VI.    Authorities Submitted as Exhibits

30. In support of Ms. Nantongo's motion, and for the Court's convenience, I attach the following cases as a compendium of authorities:

   1. **Exhibit C**: *In re Old Carco LLC*, 423 B.R. 40 (Bankr. S.D.N.Y. 2010), which explains the standards for relief under Rule 60(b) and Rule 60(d)(3), emphasizes that fraud on the court is not time-barred, and recognizes that fraud on the court may be present where a party inserts false or forged documents into the record or engages in fabrication of evidence by counsel.

   2. **Exhibit D**: *Flava Works, Inc. v. Momient*, 2013 WL 1629428 (N.D. Ill. Apr. 16, 2013), in which the court found "the most egregious fraud on the court" where a party submitted a forged work-for-hire agreement and vacated relief obtained through that fabrication.

   3. **Exhibit E**: *Soto v. County of Westchester*, 2018 WL 527977 (S.D.N.Y. Jan. 22, 2018), where the plaintiff alleged his attorney forged his signature on a settlement agreement and stole the proceeds; the court analyzed Rule 60(b) timeliness and Rule 60(d)(3) fraud-on-the-court standards, including the evidentiary burden.

   4. **Exhibit F**: *Custodio v. American Chain Link Construction, Inc.*, 2014 WL 5369003 (S.D.N.Y. Oct. 10, 2014), granting Rule 60(b) relief from an attorney's fee judgment as to a party that never signed the settlement agreement and had no basis to be bound by it.

   5. **Exhibit G**: *BLOM Bank SAL v. Honickman*, No. 23-___ (2d Cir. 2024) (summary order), addressing the proper categorization and timing of fraud-based Rule 60 motions and explaining that parties cannot re-label Rule 60(b)(3) claims as Rule 60(d)(3) to evade the one-year limit, while preserving the availability of true "fraud on the court" claims.

   6. **Exhibit H:** *Johnson v. Turnbill*, 715 Fed. Appx. 84 (2d Cir. 2018).  Fred Charles cites the "*Mpala v. Segarra*" which does not appear in the Federal Appendix, Westlaw, LexisNexis, or any other reporter. The closest case matching the cited reporter is *Johnson v. Turnbill*, 715 Fed. Appx. 84 (2d Cir. 2018), which addresses an excessive force claim based on tight handcuffing and remands for further proceedings.

31. I also attach, as **Exhibit I**, the January 17–February 4, 2026, email correspondence between my office and Nationwide's counsel, showing that, even after being alerted to the forgery allegations, Nationwide failed to provide a single settlement document bearing Olivia's signature, her case file, or any retainer agreement.

VII.   <u>What Remains Unanswered</u>

32. After multiple filings, neither Fred nor Ralph nor Nationwide has:

   1. Produced a fully executed settlement agreement bearing Olivia's signature.
   2. Produced any proof that Olivia reviewed or approved the written settlement documents.
   3. Produced Olivia's complete case file; or
   4. Submitted an affidavit denying that her signature was forged.

33. Olivia, by contrast, has submitted a sworn declaration stating that she did not sign the settlement documents and did not authorize the settlement of her sexual harassment claims. Nothing in the letters from Fred or Ralph, or in their exhibits, refutes that sworn testimony.

34. To underscore the seriousness of these allegations, undersigned counsel is willing to personally pay ten thousand dollars ($10,000.00) to Fred and Ralph Charles, jointly, if they produce for this Court's inspection the original, wet-ink settlement agreement bearing Ms. Nantongo's genuine signature, together with competent proof that she reviewed and authorized the settlement reflected in that document. Undersigned counsel makes this offer confident that no such document exists and that neither Fred nor Ralph Charles will be able to accept it.

35. The Court should decide this motion on the facts: whether the judgment in this case rests on forged documents and unauthorized conduct, not on collateral character attacks based on dismissed lawsuits, media articles, or my mental health disclosure to another court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2026, in Brooklyn, New York.

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC

EXHIBITS LIST

- **Exhibit A**: Screenshot of the January 14, 2026, group text exchange between undersigned counsel, Fred Charles, and clients from *Muhammad, et al. v. Alto Pharmacy, LLC, et al.*, 23-cv-11315, showing the full context of the "Laugh today, cry tomorrow" message, including the demand that Fred file his notice of withdrawal, the thank-you after he did, the request that he provide his hours so he could be compensated, Fred's laughing emoji in response, and the "Laugh today, cry tomorrow" reply.
- **Exhibit B**: January 18–22, 2026 email chain between undersigned counsel, Fred Charles, and Ralph Charles regarding: (a) Olivia Nantongo's retention of counsel; (b) her efforts to obtain her case file and Nationwide settlement documents; (c) counsel's request for the retainer agreement and explanation of the $12,000 check; and (d) notice of the filing of Olivia's motion and the intent to file a bar complaint.
- **Exhibit C**: *In re Old Carco LLC*, 423 B.R. 40 (Bankr. S.D.N.Y. 2010).
- **Exhibit D**: *Flava Works, Inc. v. Momient*, 2013 WL 1629428 (N.D. Ill. Apr. 16, 2013).
- **Exhibit E**: *Soto v. County of Westchester*, 2018 WL 527977 (S.D.N.Y. Jan. 22, 2018).
- **Exhibit F**: *Custodio v. American Chain Link Construction, Inc.*, 2014 WL 5369003 (S.D.N.Y. Oct. 10, 2014).
- **Exhibit G**: *BLOM Bank SAL v. Honickman*, No. 23-___ (2d Cir. 2024) (summary order).
- **Exhibit H**: *Johnson v. Turnbill*, 715 Fed. Appx. 84 (2d Cir. 2018).
- **Exhibit I**: January 17–February 4, 2026, email correspondence between undersigned counsel and Nationwide's counsel requesting settlement documents, case file, and retainer agreement.