**Tyrone Blackburn, ESQ**
**Attorney NJS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Attorney for Plaintiff,* Olivia Nantongo

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLIVIA NANTONGO on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>V.<br><br>NATIONWIDE MORTGAGE BANKERS INC.<br>　　　　　　Defendant. | CASE NO. 22-cv-04974<br>Civil Action<br><br>Supplemental Submission |

PLAINTIFF'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION TO VACATE CLERK'S JUDGMENT AND FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(3) AND 60(d)(3)

By:
Tyrone A. Blackburn, Esq.

<u>TABLE OF AUTHORITIES</u>

CASES

- *A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252 (S.D.N.Y. 2006)
- *Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350 (S.D.N.Y. 2008)
- *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)
- *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641 (S.D.N.Y. 2025)
- *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988)
- *Hallock v. State*, 64 N.Y.2d 224 (1984)
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
- *In re Andrion*, 88 A.D.3d 62, 929 N.Y.S.2d 113 (1st Dep't 2011)
- *In re Austrian & German Bank Holocaust Litigation*, 317 F.3d 91 (2d Cir. 2003)
- *In re Chazan*, 252 A.D.2d 323, 685 N.Y.S.2d 189 (1st Dep't 1999)
- *In re Larsen*, 50 A.D.3d 41, 849 N.Y.S.2d 560 (1st Dep't 2008)
- *In re Old Carco LLC*, 423 B.R. 40 (Bankr. S.D.N.Y. 2010)
- *Johnson v. Nyack Hospital*, 86 F.3d 8 (2d Cir. 1996)
- *Kropiewnicki v. National Transportation Co.*, 29 N.Y.S.2d 257 (App. Term 1st Dep't 1941)
- *Kupferman v. Consolidated Research & Manufacturing Corp.*, 459 F.2d 1072 (2d Cir. 1972)
- *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130 (S.D.N.Y. 2009)
- *McGuffin v. Port of New York Authority*, 58 A.D.2d 793, 396 N.Y.S.2d 412 (1st Dep't 1977)
- *Nash v. Y & T Distributors*, 207 A.D.2d 779, 616 N.Y.S.2d 402 (2d Dep't 1994)
- *Stein v. Mostoff*, 34 A.D.2d 655, 309 N.Y.S.2d 978 (2d Dep't 1970)
- *United States v. Smiley*, 553 F.3d 1137 (8th Cir. 2009)
- *United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995)

RULES AND STATUTES

- Fed. R. Civ. P. 60(b)(3)
- Fed. R. Civ. P. 60(d)(3)
- Fed. R. Evid. 702
- 18 U.S.C. § 1001
- 18 U.S.C. § 1343
- 29 U.S.C. § 216(b)
- N.Y. Exec. Law § 135
- N.Y. Lab. Law § 198
- N.Y. Lab. Law §§ 195(1), 195(3)
- N.Y. Rules of Prof'l Conduct 8.4(b), (c), (d)

2

TABLE OF CONTENTS

PRELIMINARY STATEMENT

STATEMENT OF FACTS

    A.  Ms. Nantongo's Claims and Reasonable Expectations

    B.  Ms. Nantongo Was Never Contacted by Her Attorney Regarding Settlement

    C.  Ms. Nantongo Learned of the "Settlement" From a Non-Lawyer

    D.  The Settlement Was Grossly Inadequate and Was Never Authorized

    E.  The Signatures Are Forged

ARGUMENT

    I.  THE FORENSIC EVIDENCE ESTABLISHES THAT MS. NANTONGO'S SIGNATURES WERE FORGED

        A.  The Expert's Qualifications

        B.  The Examined Documents

        C.  Ms. Carlson's Findings and Conclusions

    II.  THE EXPERT EVIDENCE ESTABLISHES FRAUD UPON THIS COURT WARRANTING RELIEF UNDER RULE 60(d)(3)

    III.  THE PURPORTED SETTLEMENT AGREEMENT IS VOID *AB INITIO* FOR LACK OF ATTORNEY AUTHORITY

        A.  The Burden Is on Defendant to Prove Attorney Authority

        B.  Mr. Charles Had No Express Authority to Settle

        C.  Mr. Charles Had No Apparent Authority to Settle

    IV.  DEFENDANT'S TIMELINESS ARGUMENT UNDER RULE 60(b)(3) DOES NOT BAR RELIEF

    V.  FRED CHARLES'S PROFESSIONAL RESPONSIBILITY VIOLATIONS PROVIDE ADDITIONAL EVIDENCE OF SYSTEMATIC FRAUD

    VI.  THIS COURT SHOULD EXERCISE ITS INHERENT EQUITABLE POWER AS AN INDEPENDENT BASIS FOR RELIEF

RELIEF REQUESTED

PRELIMINARY STATEMENT

Plaintiff Olivia Nantongo respectfully submits this supplemental submission pursuant to the scheduling order issued by the Honorable Vera M. Scanlon, United States Magistrate Judge, during the February 18, 2026, telephone conference. This submission presents the written report and findings of Plaintiff's retained forensic document examiner, Kathy S. Carlson, C.F.D.E., C.Q.D.E., of Western Forensic Document Examiner, LLC, and supplements the legal arguments set forth in Plaintiff's prior motion papers.

This case presents a straightforward and deeply troubling scenario: a vulnerable, foreign-born client retained an attorney to pursue federal employment claims, had no meaningful communication with that attorney throughout the litigation, and was informed one day by her attorney's non-lawyer brother that her case had been "settled" — after which a check arrived in the mail. Ms. Nantongo never authorized a settlement. She never received a settlement offer. She never signed a settlement agreement. She never saw the Acceptance of Rule 68 Offer of Judgment that was filed in her name with this Court. She had no idea that her attorney had accepted $20,000 on her behalf — keeping $12,000 for himself — to resolve claims she believed were worth far more.

Now, forensic science confirms what Ms. Nantongo has said from the beginning: the signatures on the documents filed with this Court were not hers. Ms. Carlson's examination establishes that the signatures purporting to be those of Olivia Nantongo across four documents spanning nearly three years are forensically identical — a result that is, in Ms. Carlson's professional judgment, impossible for genuine signatures, and consistent only with electronic cut-and-paste manipulation.

The judgment entered in this action was procured by fraud. It must be vacated.

STATEMENT OF FACTS

A.  Ms. Nantongo's Claims and Reasonable Expectations

In or around June or July 2022, Ms. Nantongo retained Fred V. Charles, Esq. of Charles Law, P.C. to represent her in federal employment litigation against Nationwide Mortgage Bankers, Inc. for unpaid wages, sexual harassment, and gender-motivated violence. Ms. Nantongo understood that her wage-and-hour claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") entitled her to, among other things:

- Double damages (liquidated damages) equal to the full amount of unpaid minimum wages and overtime under both the FLSA, 29 U.S.C. § 216(b), and the NYLL.

4

- Pre-judgment interest at 9% per annum, compounded over time, on her unpaid wages under NYLL § 198.
- Statutory penalties of $10,000 for violations of the wage notice and wage statement requirements under NYLL §§ 195(1) and 195(3); and
- Attorneys' fees and costs, which are mandatory for a prevailing plaintiff under both the FLSA and the NYLL.

Ms. Nantongo was never advised by Mr. Charles that any settlement offer had been made by Defendant. She was never shown any analysis of the value of her claims. She was never presented with a breakdown of what her damages might be. She was never counseled regarding the risks or benefits of settlement versus continued litigation. She was never asked for her consent to settle.

B.  Ms. Nantongo Was Never Contacted by Her Attorney Regarding Settlement

Ms. Nantongo has no phone records, no text messages, no emails, and no written communications of any kind from Fred V. Charles advising her that: (a) Defendant had made a settlement offer; (b) he was considering accepting a settlement offer; (c) he had accepted a settlement offer; or (d) a judgment had been entered against her in this Court. The complete absence of any such communications is not an oversight or a gap in her records — there are none because none were ever sent.

C.  Ms. Nantongo Learned of the "Settlement" From a Non-Lawyer

The first and only notification Ms. Nantongo received regarding the purported resolution of her case came not from her attorney, but from Ralph Charles — Fred Charles's brother, who is not a licensed attorney and has no role in Charles Law, P.C. Ralph Charles telephoned Ms. Nantongo, informed her that "your case was settled," and subsequently mailed or delivered a check to her in the amount of $28,000. No explanation was provided as to the terms of the settlement, the scope of claims released, the amount of attorneys' fees taken, or the existence of any settlement agreement or court filing. When Ms. Nantongo asked Ralph Charles whether she owed Fred Charles any fees, Ralph told her not to worry — that "Fred has already been paid."

Ms. Nantongo accepted the check. She is not a lawyer, she is not an American citizen, and she had no reason to believe that the check she received was the product of a fraudulent scheme rather than a legitimate resolution of her case conducted by her retained counsel. She also had no reason to know — and was never told — that her sexual harassment claims had been swept into the same resolution.

5

D. The Settlement Was Grossly Inadequate and Was Never Authorized

The Rule 68 Offer of Judgment accepted by Mr. Charles on Ms. Nantongo's behalf was for $20,000 — inclusive, on its face, of all unpaid wages, liquidated damages, statutory penalties, pre-judgment interest, and attorneys' fees and costs. Of that $20,000, Mr. Charles retained $12,000 in attorneys' fees paid directly by Defendant, leaving Ms. Nantongo with $8,000 net from the court-filed judgment — for years of unpaid wages, liquidated damages she was entitled to as a matter of law, and statutory penalties. She also received an additional $8,000 pursuant to a separate, undisclosed settlement agreement she never signed, bringing her total to $28,000 — a sum that, by any measure, fails to account for the value of her claims including 9% compound interest, mandatory liquidated damages, and $10,000 in wage notice and wage statement penalties to which she was entitled.

Ms. Nantongo never consented to this resolution. She was never consulted. She was never given the opportunity to decide whether $28,000 — or any amount — was acceptable in exchange for the release of all her claims, including her sexual harassment claims. That decision was made for her, without her knowledge, by her own attorney.

E. The Signatures Are Forged

Ms. Nantongo's position that she never executed any settlement documents is now confirmed by forensic science. Ms. Carlson's examination of the four questioned documents bearing Ms. Nantongo's purported signature — spanning from December 2021 through December 2024 — reveals that all four signatures are forensically identical. Under the foundational principle of natural variation, this is a forensic impossibility for genuine signatures and is consistent only with electronic manipulation. The signatures were not written by Ms. Nantongo. They were placed on the documents without her knowledge or consent.

## ARGUMENT

### I. THE FORENSIC EVIDENCE ESTABLISHES THAT MS. NANTONGO'S SIGNATURES WERE FORGED

A. The Expert's Qualifications

Kathy S. Carlson, C.F.D.E., C.Q.D.E., is a Certified Forensic Document Examiner and Certified Questioned Document Examiner with over fifteen years of experience in forensic document examination. Ms. Carlson is the current President of the International Association of Document Examiners (IADE), a Diplomate, Continued Education Chair, and Librarian of the same organization. She has provided expert testimony in federal and state courts across the country,

6

including in the Eastern District of New York, on issues of signature authentication, forgery, and questioned document examination. Her curriculum vitae is attached to her report as Appendix A.

Ms. Carlson's testimony satisfies the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993): her opinions are based on sufficient facts and data, are the product of reliable principles and methods — specifically, the Law of ACEV (Analysis, Compare, Evaluate, Verify) — and she has reliably applied those principles and methods to the facts of this case.

Forensic document examination expertise is admissible as nonscientific "skilled" testimony under Rule 702. *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1041 (S.D.N.Y. 1995) (holding that FDE expertise "is therefore outside the scope of *Daubert*, except to the extent that *Daubert* dictates that Fed. R. Evid. 702 governs the admissibility of particular fields of expert testimony," but admissible as "true expertise" that is "practical" in character). Courts in this jurisdiction consistently admit handwriting expert testimony when properly qualified. *A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 268 (S.D.N.Y. 2006) ("every circuit court that has considered this question has concluded that a properly admitted handwriting expert may offer an opinion regarding the authorship of a handwriting sample if the factors enumerated in *Daubert* are satisfied"). Importantly, Ms. Carlson's opinion here is not a standard authorship comparison of the type occasionally challenged in other contexts. Rather, she applies a fundamental principle of forensic science — that identical signatures across multiple documents spanning three years violates the principle of natural variation and is a forensic impossibility consistent only with electronic manipulation.

### B. The Examined Documents

Ms. Carlson examined the following four questioned documents (labeled Q1–Q4), all of which purport to bear the signature of Olivia Nantongo:

- Q1 — Charge of Discrimination; dated December 23, 2021.
- Q2 — EEOC Charge; dated January 20, 2022.
- Q3 — Settlement Agreement; dated November 21, 2024.
- Q4 — Notice of Acceptance of Rule 68 Offer of Judgment (Dkt. 42); dated December 6, 2024.

### C. Ms. Carlson's Findings and Conclusions

(1) The Four Signatures Are Forensically Identical.

Upon analyzing all four questioned documents, Ms. Carlson observed that the signatures purporting to be those of Olivia Nantongo are the same across all four documents, notwithstanding

7

that the documents span a date range of approximately three years (2021–2024). This observation is demonstrated in Exhibits 1 and 2 to Ms. Carlson's report, which show the four signatures superimposed on one another.

(2) Identical Signatures Across Multiple Documents Over Multiple Years Are Impossible.

Ms. Carlson's conclusions are grounded in the foundational scientific principle underlying all forensic handwriting analysis:

*"Handwriting identification is based on the principle that no two people write exactly the same, and the principle that no one person writes exactly the same way twice, which is demonstrated through natural variation. Natural variation is a normal or usual deviation that is repeated in each individual's handwriting. These four signatures do not demonstrate natural variation, and it would be impossible to sign exactly the same."*

Writing is a complex neuromuscular process involving the brain, arm, hand, and fingers. Through practice and repetition, each writer develops their own individual characteristics — a "master pattern" — which, while consistent in habit, necessarily varies with each individual execution. The complete absence of any natural variation across four signatures executed over three years establishes conclusively that these signatures were not organically written by the same person on four separate occasions.

(3) The Signatures Were Electronically Manipulated.

Ms. Carlson concluded that if the documents were intended to be executed with wet ink signatures, the identical signatures were electronically manipulated — cut-and-pasted — onto each document. This conclusion is consistent with the argument Plaintiff's counsel raised before this Court at the February 18, 2026, conference: that a single signature image was copied and imposed on each document using Adobe or comparable software, without Ms. Nantongo's knowledge or participation.

(4) Deep Metadata Analysis of Native Electronic Files Would Provide Conclusive Authentication.

Ms. Carlson further notes that if the documents were processed as electronic signatures, the definitive means of authentication or refutation is deep metadata analysis of the first-generation electronic version of each document. Such analysis would reveal the platform used, IP addresses, timestamps, and the electronic authentication chain — information that would either confirm legitimate e-signature execution or expose its absence. *Aguilar v. Immigration & Customs*

8

*Enforcement*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (defining metadata as "data about data" including timestamps, IP addresses, and authentication chains; holding system metadata relevant when document authenticity is questioned). Plaintiff respectfully requests that this Court direct Defendant and/or former counsel Fred V. Charles, Esq. to produce the native electronic versions of all four documents with all metadata intact for submission to Ms. Carlson for this supplemental analysis.

II.   THE EXPERT EVIDENCE ESTABLISHES FRAUD UPON THIS COURT WARRANTING RELIEF UNDER RULE 60(d)(3)

Rule 60(d)(3) grants this Court inherent power to "set aside a judgment for fraud on the court." Unlike a motion under Rule 60(b)(3), relief under Rule 60(d)(3) is not subject to any time limitation. *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972); *In re Old Carco LLC*, 423 B.R. 40, 51 (Bankr. S.D.N.Y. 2010) ("claim based upon fraud on the court under Rule 60(d)(3) is intended 'to protect the integrity of the judicial process' and, therefore, is not time-barred").

Fraud on the court is "limited to fraud which seriously affects the integrity of the normal process of adjudication" and "should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)).

The filing of an Acceptance of Rule 68 Offer of Judgment (Dkt. 42) bearing a forged signature — a document filed directly with this Court, resulting in the entry of a clerk's judgment — is precisely the type of conduct that constitutes fraud upon the court. The document was not merely used as evidence in a proceeding; it was the instrument by which this Court's jurisdiction over Plaintiff's claims was extinguished. Ms. Carlson's expert findings establish that the signature on that document (Q4) is forensically identical to signatures on documents dated nearly three years earlier (Q1, Q2) — a forensic impossibility absent electronic manipulation.

"Fraud on the court may be present if a party inserts a false or forged document into the record." *In re Old Carco LLC*, 423 B.R. at 53. Courts may "exercise its equitable power to set aside a fraudulent judgment 'to maintain the integrity of the courts and safeguard the public.'" *Id.* at 51 (quoting *United States v. Smiley*, 553 F.3d 1137, 1142 (8th Cir. 2009)).

Accordingly, relief under Rule 60(d)(3) is appropriate and is not barred by any timeliness argument. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) (courts have inherent power to vacate judgments procured by fraud, without limitation of time).

### III.   THE PURPORTED SETTLEMENT AGREEMENT IS VOID *AB INITIO* FOR LACK OF ATTORNEY AUTHORITY

Even if the signatures on the settlement documents were genuine — which they demonstrably are not — the purported settlement would still be void because Fred V. Charles lacked any authority, express or apparent, to settle Ms. Nantongo's claims. Under New York law, an attorney has no implied power by virtue of a general retainer to compromise and settle a client's claim. *Nash v. Y & T Distributors*, 207 A.D.2d 779, 780 (2d Dep't 1994). When such authority cannot be proven, no contract ever comes into being, and a settlement agreement negotiated by an attorney without client consent is not personally binding on the client. *Id.*

#### A.  The Burden Is on Defendant to Prove Attorney Authority

The party seeking to enforce a settlement — here, Defendant Nationwide — bears the burden of proving that the attorney had authority to enter the settlement on the client's behalf. *Id.*: *McGuffin v. Port of New York Auth.*, 58 A.D.2d 793 (1st Dep't 1977) (vacating settlement where plaintiff had no knowledge of proceedings, was never consulted about settlement figure, and never consented; defendants failed to prove attorney had authority). Defendant has not, and cannot, satisfy this burden.

#### B.  Mr. Charles Had No Express Authority to Settle

It is undisputed that Ms. Nantongo never expressly authorized Mr. Charles to settle this action. She was never presented with a settlement offer. She was never asked for her consent to any proposed resolution. She was never informed that settlement negotiations were even occurring. There is no written retainer agreement conferring settlement authority, no email chain documenting her approval, no text message giving consent. The record is devoid of any evidence — documentary or testimonial — that Ms. Nantongo granted Mr. Charles express authority to accept $20,000 (or any sum) in exchange for the release of all her claims.

#### C.  Mr. Charles Had No Apparent Authority to Settle

Nor can Defendant establish that Mr. Charles possessed apparent authority to bind Ms. Nantongo to a settlement. "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the

agent possesses authority to enter into a transaction." *Nash*, 207 A.D.2d at 780. "The agent cannot by his own acts imbue himself with apparent authority." *Id.* (quoting *Hallock v. State of New York*, 64 N.Y.2d 224, 231 (1986)).

Upon this record, Defendant cannot demonstrate that Ms. Nantongo — the principal — conveyed to Defendant or its counsel, by "words or conduct," that Mr. Charles possessed authority to settle the action. The existence of an attorney-client relationship, standing alone, does not confer settlement authority. *Id.* Mr. Charles's representation of Ms. Nantongo in this litigation — including appearances at preliminary conferences and depositions — does not, as a matter of law, clothe him with authority to compromise her claims without her knowledge or consent. *Id.*

Defendant has not satisfied its burden of showing that Mr. Charles had authority to settle this case. "Since a settlement agreement negotiated by an attorney, without the consent of his client, is not personally binding on the client," Ms. Nantongo's motion for relief from the purported settlement must be granted. *Id.* (citing *Stein v. Mostoff*, 34 A.D.2d 655 (2d Dep't 1970)); *see also Kropiewnicki v. Nat'l Transp. Co.*, 29 N.Y.S.2d 257 (App. Term 1941) (where attorney was without authority to settle and discontinue action, court must vacate judgment and restore case to calendar).

### IV. DEFENDANT'S TIMELINESS ARGUMENT UNDER RULE 60(b)(3) DOES NOT BAR RELIEF

Defendant has argued that Plaintiff's motion is untimely under Rule 60(b)(3), which requires that such a motion be filed within one year of the entry of judgment. Plaintiff respectfully submits that this argument fails for two independent reasons.

First, as set forth in Section II above, Plaintiff's principal bases for relief are Rule 60(d)(3) (fraud on the court) and the voiding of an unauthorized settlement under New York law, neither of which carries a time limitation.

Second, even if Rule 60(b)(3) applied, the one-year limitations period is subject to equitable tolling where, as here, the fraud was inherently concealed from the aggrieved party. Ms. Nantongo did not learn that a judgment had been entered against her — let alone that documents bearing her forged signature had been filed with this Court — until undersigned counsel pulled the docket and provided the documents to her in early 2026. She could not have discovered the forgery prior to that time through the exercise of reasonable diligence, as she had no reason to believe her former attorney had settled her case without her knowledge or consent. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (limitations period tolled where plaintiff could not have

11

discovered the facts supporting the claim through the exercise of due diligence). Moreover, any laches defense must fail because the sophisticated nature of the electronic signature manipulation — creating forensically identical signatures across multiple years — would not be detectable without expert forensic analysis, and Ms. Nantongo's circumstances provide a more than reasonable explanation for any delay in seeking relief. *McGuffin*, 58 A.D.2d 793 (laches rejected where plaintiff's absence from legal proceedings provided credible explanation for delayed challenge to unauthorized settlement).

## V.   FRED CHARLES PROFESSIONAL RESPONSIBILITY VIOLATIONS PROVIDE ADDITIONAL EVIDENCE OF SYSTEMATIC FRAUD

Fred V. Charles's conduct constitutes multiple serious professional responsibility violations that support this motion and demonstrate the systematic nature of the fraud perpetrated upon the Court. By forging client signatures and falsely notarizing those forgeries, Mr. Charles violated New York Rules of Professional Conduct 8.4(b), (c), and (d) — conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct that is prejudicial to the administration of justice; and conduct that reflects adversely on his fitness to practice law.

New York courts have consistently held that attorney forgery and false notarization constitute serious professional misconduct warranting substantial sanctions. *In re Chazan*, 252 A.D.2d 323, 325 (1st Dep't 1999) ("Forgery, particularly when committed by an attorney, has always been viewed by this Court as a serious matter," with sanctions ranging from suspension to disbarment depending on repetitiveness and profit motive; three-month suspension imposed for forging client's signature, falsely notarizing the forgery, and attempting to suborn perjury). Importantly, false signatures and false notarizations constitute disciplinary violations even when done with client consent — but here, there was no consent whatsoever. *In re Larsen*, 50 A.D.3d 41 (1st Dep't 2008).

The systematic pattern of forging signatures across multiple documents spanning three years, combined with fraudulent notarization practices, represents the type of repetitive, deliberate misconduct that New York courts have found warrants severe sanctions. *In re Andrion*, 88 A.D.3d 62 (1st Dep't 2011) (three-year suspension imposed for systematic forgery across multiple documents, misappropriation of notary stamps, and filing of fraudulent documents with government offices; court emphasized that such a pattern constitutes an aggravating factor warranting enhanced sanctions).

12

Mr. Charles personally served as the notary public on the Nantongo EEOC Charge of Discrimination, affixing his notary commission stamp (No. 02CH6423718, Qualified in Queens County) and certifying under oath that Ms. Nantongo personally appeared before him and signed the document in his presence. If, as Ms. Carlson's examination establishes, the signature on that document was an electronically duplicated image rather than a genuine wet ink signature, then Mr. Charles certified a false notarial acknowledgment — an affirmative fraud, certified under penalty of law, that he then used as the foundation for federal court filings that extinguished his client's claims without her knowledge or consent. Under New York Executive Law § 135, a notary who falsely certifies an acknowledgment is guilty of a misdemeanor.

These professional responsibility violations provide additional evidence supporting the Court's authority to vacate the judgment and refer this matter for disciplinary proceedings, as the integrity of the legal profession and court system has been fundamentally compromised by counsel's fraudulent conduct.

VI.   THIS COURT SHOULD EXERCISE ITS INHERENT EQUITABLE POWER AS AN INDEPENDENT BASIS FOR RELIEF

This Court possesses inherent equitable power to set aside the judgment to preserve the integrity of the judicial process and prevent a manifest injustice. Courts retain inherent authority to reconsider orders and judgments when confronted with evidence that the judicial machinery was corrupted by fraudulent documents. *In re Old Carco LLC*, 423 B.R. at 49 (recognizing courts' inherent power to reconsider orders when confronted with special factual circumstances, requiring "good reason" and exercise within reasonable time before rights have vested).

The systematic forgery of client signatures on court-filed documents represents an attack on the court's ability to perform its impartial adjudicatory function. Courts may impose sanctions under their inherent authority when they find fraud on the court. *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 645 (S.D.N.Y. 2025). District courts also possess ancillary jurisdiction through inherent power to address attorney professional responsibility violations. *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 103 (2d Cir. 2003).

Ms. Nantongo's case presents the type of extraordinary circumstances that justify exercise of the court's inherent power, as the judgment was obtained through documents bearing signatures that forensic analysis proves were electronically manipulated. The court's inherent power serves

13

as a safeguard against judgments that would constitute a grave miscarriage of justice, particularly where attorney misconduct has corrupted the judicial process itself.

<u>RELIEF REQUESTED</u>

For the foregoing reasons, Plaintiff Olivia Nantongo respectfully requests that this Court grant the following relief: first, vacate the Clerk's Judgment entered in this action pursuant to the Acceptance of Rule 68 Offer of Judgment, on the grounds that the signature on that document was forged and that its filing constituted fraud upon this Court under Fed. R. Civ. P. 60(d)(3); second, declare the purported settlement agreement void *ab initio* under New York law for lack of attorney authority, as Defendant has failed to meet its burden of proving that Fred V. Charles, Esq. possessed express or apparent authority to settle Ms. Nantongo's claims; third, restore this action to the Court's active docket for further proceedings on Ms. Nantongo's underlying claims; fourth, direct Defendant Nationwide Mortgage Bankers, Inc. and/or former counsel Fred V. Charles, Esq. to produce the native electronic versions of all four questioned documents (Q1–Q4) with all metadata intact for submission to Ms. Carlson for deep metadata analysis; fifth, refer this matter to the United States Attorney's Office for the Eastern District of New York for investigation of potential violations of 18 U.S.C. § 1001 (false statements to a federal court), 18 U.S.C. § 1343 (wire fraud), and applicable state forgery and false notarization statutes; and sixth, grant such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
March 17, 2026

Respectfully submitted,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Counsel for Plaintiff

14