UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLIVIA NANTONGO, *on behalf of themselves and all others similarly situated,*<br><br>                     Plaintiffs,<br><br>    -against-<br><br><br>NATIONWIDE MORTGAGE BANKERS, INC.<br>               Defendant. | Civil Action No.: 1:22-cv-4974 (OEM)(VMS) |

**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF OLIVIA NANTONGO'S
F.R.C.P. 60(b)(3) and 60(d)(3) MOTION TO VACATE SATISFACTION OF JUDGMENT**

CHARLES LAW, P.C.

Fred V. Charles, Esq.
244 Fifth Ave., Suite 2717
New York, NY 10001
Tel: (646) 494-2662
Email: fcharles@charleslawpc.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES

I.    PRELIMINARY STATEMENT

II.   PROCEDURAL HISTORY & STATEMENT OF FACTS

III.  STATEMENT OF FACTS

IV.   LEGAL ARGUMENT

  A.  MS. NANTONGO'S 60(B)(3) MOTION IS  UNTIMELY

  B.  MS. NANTONGO FAILS TO PLEAD FRCP 60(d) CLAIM FOR RELIEF

  C.  MS. NANTONGO FAILS TO PLEAD FRAUD OR FORGERY

  D.  COUNSEL HAD AUTHORITY

  E.  BLACKKBURN MUST BE SANCTIONED AND REFERRED FOR DISCIPLINE

V. CONCLUSION

# TABLE OF AUTHORITIES

## Cases

Alvarez v. City of New York, 146 F. Supp. 2d 327 (S.D.N.Y. 2001)

Amerally v. Liberty King Produce, Inc., 170 A.D.3d 637 (2d Dep't 2019)

Chill v. Gen. Elec. Co., 101 F.3d 263 (2d Cir. 1996)

Colucci v. Beth Israel Med. Ctr., 531 F. App'x 118 (2d Cir. 2013)

Facey v. Fisher, 2025 N.Y. Misc. LEXIS 7630 (Sup. Ct. N.Y. Cnty. Sept. 15, 2025)

Gleason v. Jandrucko, 860 F.2d 556 (2d Cir. 1988)

Hillair Capital Invs., L.P. v. Smith Sys. Transp., Inc., 640 F. App'x 49 (2d Cir. 2016)

Jakes v. Youngblood, No. 24-cv-1608, 2025 U.S. Dist. LEXIS 160856 (W.D. Pa. June 26, 2025)

Jones v. Combs, No. 24-cv-1457, 2025 U.S. Dist. LEXIS 54277 (S.D.N.Y. Mar. 24, 2025)

LinkCo, Inc. v. Akikusa, 367 F. App'x 180 (2d Cir. 2010)

Mpala v. Segarra, 718 F. App'x 84 (2d Cir. 2018)

Pauwels v. Deloitte LLP, 83 F.4th 171 (2d Cir. 2023)

Pereira v. Sonia Holdings (In re Artha Mgmt.), 91 F.3d 326 (2d Cir. 1996)

Richards v. Ashcroft, 400 F.3d 125 (2d Cir. 2005)

United States v. Int'l Bhd. of Teamsters, 986 F.2d 15 (2d Cir. 1993)

Warren v. Garvin, 219 F.3d 111 (2d Cir. 2000)

Zunzurovski v. Fisher, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024)

## Statutes and Rules

Fed. R. Civ. P. 60(b)

Fed. R. Civ. P. 60(c)(1)

Fed. R. Civ. P. 60(d)(3)

I submit this Memorandum of Law ("MOL"), and attached Declaration of Fred V. Charles ("Charles Decl.") and exhibits, in opposition to Plaintiff Olivia Nantongo's ("Nantongo" or "Plaintiff") motion to vacate (ECF Nos. 48, 61) the December 9, 2024 satisfaction of judgment settling this action. Ms. Nantongo's motion should be denied in its entirety because it is untimely pursuant to the Federal Rules of Civil Procedure ("FRCP) 60(b)(3), fails to state a claim for relief pursuant to FRCP 60(d), and fails to state a claim for forgery or fraud. Rather, the Court must sanction counsel Tyrone Blackburn ("Blackburn") for filing this motion for improper purposes, knowingly making false statements to the Court to advance his unhinged campaign of harassment, which is detailed below and thoroughly documented through attached exhibits, mostly of Mr. Blackburn's own writings.

## **PRELIMINARY STATEMENT**

Plaintiff Nantongo commenced the underlying action on August 23, 2022, against Defendant Nationwide Mortgage Bankers, Inc. ("NMB") for failure to properly pay wages to Ms. Nantongo, who alleged that she worked for NMB approximately five (5) months as an unlicensed mortgage salesperson in NMB's Queens, NY branch office. New York federal district courts require cases with causes of action brought under the Fair Labor Standards Act ("FLSA") participate in the Courts' FLSA mediation program. On April 6, 2023, the parties and counsel, including me, Ms. Nantongo, outside counsel for NMB and NMB's in-house counsel, along with the court-appointed mediator, participated in a three-hour mediation session to discuss Ms. Nantongo's wage and hour claims and her settlement expectations for her claims. Ms. Nantongo confirmed a dollar amount range at which she would agree to settle her wage and hour claims.

(There were no sexual harassment claims discussed because there were no sexual harassment claims pending against NNB).

After another year and a half of fact discovery, the parties agreed to a monetary settlement of the wage and hour claims in line with Ms. Nantongo's expectations. I informed Ms. Nantongo of the settlement she would receive, and she accepted it. This action was a routine wage and hour matter, and Ms. Nantongo collected $28,000, thanked me and, since the settlement, allegedly moved outside the United States. This is until Mr. Blackburn contacted Ms. Nantongo (contrary to Blackburn's false statement that Ms. Nantongo contacted him) to convince or conspire with Ms. Nantongo to spin a false story against me that Ms. Nantongo was somehow defrauded. Nothing could be further from the truth. Ms. Nantongo principal evidence is a handwriting expert's report on electronic signatures. In this digital age, electronic signatures are common and was used for Ms. Nantongo's convenience, and was authorized by Ms. Nantongo.

In fact, to date Ms. Nantongo's motion is a ruse orchestrated by Mr. Blackburn in order to further an unhinged, months-long campaign of harassment against me and Ralph Charles. Just as an example, one day before Ms. Nantongo first contacted me via email on January 14, 2026, where she wished me happy new year and requested an update on a non-existent sexual harassment case, Mr. Blackburn sent me unsolicited text messages threatening me with a legal malpractice lawsuit and advising me which insurance carriers pay the highest dollar settlement amounts. I had no idea what Mr. Blackburn was referring to, but now it is apparent that Ms. Nantongo was not actually seeking an update. All of this is thoroughly detailed and documented in the attached exhibits. Further, Mr. Blackburn has a well documented history of falsifying claims, including against celebrities who have sued Mr. Blackburn or his clients for defamation. U.S. District Judge Denise L. Cote of the U.S. District Court for the Southern District of New York was prescient,

5

approximately two years ago, stating in *Zunzorowski v. Fisher,* No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568, at \*14 (S.D.N.Y. April 3,2024)("[Mr. Blackburn] improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly.").

Mr. Blackburn is engaging in that same activity here.  It should be noted that Ms. Nantongo fails to submit an affidavit or any sworn declaration attesting to the facts of this matter.  Instead, this motion is supported by the Affidavit of Tyrone Blackburn, who has no personal knowledge of many of the "facts" he asserts herein.  In fact, Mr. Blackburn misstates basic facts that are contradicted by the record and contradicts Ms. Nantongo's recent emails to me.  In any event, Ms. Nantongo's alleged last day of work for Defendant NMB was in May 2021.  Therefore, by December 9, 2024, the date she claims she was defaulted, any sexual harassment claims would have been time-barred under federal, state or New York City law.  Therefore, Ms. Nantongo may not plausibly allege that she was defrauded or deprived of any viable legal rights.

Even worse, Mr. Blackburn, in his letter-motion to the Court (ECF No. 48), made a claim regarding Ralph Charles's employment with the U.S. Equal Employment Opportunity Commission, "A. Information Concerning Ralph Charles's EEOC Employment Upon information and belief, Ralph Charles is currently suspended from his employment with the EEOC pending investigation into a fraudulent self-dealing scheme. According to information provided to me, Mr. Ralph Charles allegedly created a fraudulent "ADR AttorneyReferral Program" through the Alternative Dispute Resolution mediation unit where he worked at the EEOC." *See* Letter Motion to Vacate at 7. (ECF No. 48). This is a brazen fabrication by Mr. Blackburn.  No one provided Mr. Blackburn any information.  In fact, it was Mr. Blackburn, on December 23, 2025, who called and emailed the EEOC with these fictional allegations. The emails sent by Mr. Blackburn are

attached. *See* Declaration of Fred V. Charles, Exhibit D. All this shows is that this "motion" is a pre-planned sham by Mr. Blackburn and Ms. Nantongo.

### PROCEDURAL HISTORY

Plaintiff Nantongo commenced this wage and hour action against Defendant NMB on August 23, 2022. (ECF No. 1). Defendant NMB filed an Answer to Ms. Nantongo's Complaint on September 19, 2022. (ECF No. 11). On January 9, 2023, Tyrone Blackburn filed a notice of appearance in this action. (ECF No. 12). On March 7, 2023, Your Honor referred this action to court/ordered FLSA mediation. On April 18, 2023, mediator Barry J. Peek filed his Report of Unsettled Mediation. On July 5, 2023, Your Honor so-ordered the parties' proposed discovery scheduling order. After one year of discovery and the Court's encouragement to seek further mediation, Plaintiffs agreed to accept Defendant NMB's offer of judgment, and the related documents were filed with the Court. (ECF Nos. 42-47). On January 22, 2026, Ms. Nantongo filed a motion to vacate the satisfaction of judgment. (ECF No. 48). On February 9, 2026, U. S. District Judge Margo K. Brodie referred the motion to vacate to this Court for disposition. On March 25, 2026, Ms. Nantongo filed a related action against me, Ralph Charles and Charles Law P.C. *Nantongo v. Charles et al.,* 26-cv-1769 (EDNY).

### STATEMENT OF FACTS

I met Ms. Nantongo through Ralph Charles, who was, at the time, a close personal friend of Ms. Nantongo. (Charles Decl. XX 4). Plaintiff Nantongo commenced this wage and hour action against Defendant NMB by filing a Complaint ("Compl.") on August 23, 2022. (ECF No. 1). NMB is a mortgage provider that provides financing options to residential property owners. (Compl. XX

7). Ms. Nantongo alleged that NMB's Queens, NY branch manager hired her as a business development employee on or around December 8, 2020. (Compl. XX 18). Ms. Nantongo alleged that her employment with NMB ended on or around May 11, 2021. Ms. Nantongo was not a licensed mortgage broker or salesperson. (Compl. XX 22). Ms. Nantongo's duties included marketing NMB's products and services to the general public through unsolicited cold calls and ZOOM meetings. (Compl. XX 23). Ms. Nantongo alleged that she was not compensated for her time working for NMB. (Compl. XX 28). On March 7, 2023, this Court referred this action to court-ordered FLSA mediation. On April 6, 2023, the parties, including me, Ms. Nantongo, and NMB's outside and in-house counsel, participated in a three-hour mediation session to discuss Ms. Nantongo's wage and hour claims. (Charles Decl. XX 14). ¶¶On January 14, 2026, Ms. Nantongo sent an email to me requesting an update on ¶her sexual harassment case. (Charles Decl. Ex. A), One day earlier, Mr. Blackburn sent a text message to me threatening a legal malpractice lawsuit and advising me which insurance carriers paid the largest settlements.

## **LEGAL ARGUMENT**

### Ms. Nantongo's Motion Is Untimely Under FRCP 60(b)(3)

The Court should deny Ms. Nantongo's motion with prejudice because it is time barred. Fed. R. Civ. P. 600(b) motions based on fraud, misconduct or misrepresentation must be brought within a reasonable time, and no later than one year, pursuant to Fed. R. Civ. P. 60(c)(1): "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Ms. Nantongo brings this motion pursuant to Fed. R. Civ. P. 60(b)(3), which has an absolute one year

limit. *Colucci v. Beth Israel Med. Ctr.*, 531 Fed Appx. 118, 119 (2d Cir. 2013)("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding….**This one-year limitations period is 'absolute.'**" (*quoting Warren v. Garvin,* 219 F.3d 111, 118 (2d Cir. 2000) (emphasis added); *see Mpala v. Segarra*, 715 Fed. Appx. 84, 85 (2d Cir. 2018)(holding that plaintiff failed to bring a Rule 60(b)(1) motion within a reasonable time even though it was brought within one year.).

Here, Ms. Nantongo filed her Rule 60(b)(3) motion on January 22, 2026. (ECF No. 48). As noted by Mr. Blackburn, this action was terminated on December 9, 2024.  Therefore, Ms. Nantongo had, at the latest,  until December 9, 2025 to file the instant motion.  She failed to do so. Further, Mr. Blackburn, as he noted, filed a Notice of Appearance in this action on January 9, 2023. (ECF No. 12).  Therefore, Mr. Blackburn received notice via ECF of all filings in this action. Ms. Nantongo received proceeds for her wage and hour claims of $28,000 also in December 2024. Further, as noted by Mr. Blackburn, Ms. Nantongo has since moved her residence to outside of the United States.  There is simply no excuse for Ms. Nantongo's untimeliness, and the Court must deny her motion in its entirety with prejudice.

### Ms. Nantongo Fails to Plead a Claim For Relief Under FRCP 60(d)(3)

The Court must deny Ms. Nantongo's claim for relief pursuant to FRCP 60(d) because she fails to provide clear and convincing evidence of any fraud on the court.  *Linkco Inc., v. Naoyuki Akikusa*, 357 Fed Appx. 180, 181 (2d Cir. 2010).  Relief under FRCP 60(d) is narrower than relief under FRCP 60(b)(3).  *Gleason v. Jandrucko*, 860 F.2d 556, 556 (2d Cir. 1988).  To establish a claim for relief pursuant to FRCP 60(d), a movant must: (1) show that it has no other available or adequate remedy; (2) demonstrate that its own fault, neglect, or carelessness did not

create the situation for which it seeks equitable relief; and (3) establish a recognized ground – such as fraud, accident, or mistake – for the equitable relief. *Linkco,* 180 Fed. App'x at 182.  Here, Ms. Nantongo cannot satisfy any of these elements.  First, she cannot argue that she has no other available remedies because, after filing this motion, Ms. Nantongo filed a separate related action (just as Mr. Blackburn had promised even before Ms. Nantongo emailed me requesting an update on her non-existent sexual harassment case) in this District entitled *Nantongo v. Charles Law, P.C. et al.*, 26-cv-1769 (EDNY)(OEM) naming me, Ralph Charles and Charles Law, P.C. as defendants. Therefore, she may not argue that she has no other available remedy for her claims.

Second, Ms. Nantongo's new gripes may have been resolved if not for her own neglect. She waited thirteen (13) months after receiving her settlement funds and allegedly moving outside of the United States to raise any issue with her wage and hour settlement.  Ms. Nantongo had never called, wrote, texted or email me regarding any displeasure with the settlement or sexual harassment case that was filed on her behalf.  In fact,  any sexual harassment case would been time barred as of May 2024, at the latest.  Third, Ms. Nantongo, as discussed below, has not established fraud or forgery.  Ms. Nantongo is confused or misled by Mr. Blackburn.  Furthermore, alleged fraud on a single party, as here,  does not meet the standard for relief pursuant to FRCP 60(d)(3). *Gleason*, 860 F.2d at 560.

Ms. Nantongo Fails to Plead a Claim for Fraud or Forgery

Ms. Nantongo fails to plausibly plead a claim for fraud. *Pauwels v. Deloitte LLP*, 83 F.4th 171, 171 (2d Cir. 2023)("To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.").  First, the Court cannot find a material

10

misrepresentation or omission of fact because, by her own words and the words of Tyrone Blackburn, it is clear that Ms. Nantongo is actually confused or misled about the facts herein.  In her Supplemental Brief ("Supp. Br.") in support of her motion to vacate, supported by the Affidavit of Tyrone Blackburn, Mr. Blackburn states that  "Ms. Nantongo did not learn **that a judgment had been entered against her**….until undersigned counsel pulled the docket and provided the documents to her in early 2026." (Supp. Br. at 11)(emphasis added).  Obviously, this is a mistake of the basic fact given the judgment was entered in her favor.  There was no judgment entered against her in this action, and the fact is that Ms. Nantongo has been misinformed by her counsel of a material fact.  Ms. Nantongo, by her own words, has also shown that she is actually confused or misled about the claims in this action.  On January 14, 2026, Ms. Nantongo emailed me regarding next steps on her (non-existent) sexual harassment case.  Also, Ms. Nantongo has not stated any representation that I made to her that was false.  Furthermore, Ms. Nantongo fails to plead, or even state, any intent to defraud her. *Chill v. GE*, 101 F.3d 263, 270 (2d Cir. 1996).

Ms. Nantongo fails to plausibly plead any claim for forgery because she fails to plead any facts demonstrating that there was any false making of a writing or any intent to defraud Ms. Nantongo.   Since intent to defraud is a critical element necessary for forgery, Ms. Nantongo's forgery argument fails. *Richard's v. Ashcroft*, 400 F.3d 125, 125 (2d Cir. 2005).

Here, Ms. Nantongo not only fails to state any intent to defraud, she has failed to state that she was defrauded of anything.  Intent to defraud requires a motive on behalf of the guilty party that is not stated by Ms. Nantongo. Ms. Nantongo settled her wage and hour claims for $28,000. S he has not alleged non-receipt of the funds.  Rather, her claim, though difficult to decipher, appears to be that the signatures on the closing documents were not her handwritten signatures, and therefore they are forged.  However,  this allegation alone does not meet any legally

11

cognizable cause of action for forgery, especially considering, as discussed below her counsel possessed actual and apparent authority to act on her behalf.

<u>Ms. Nantongo's Counsel Acted With Authority</u>

Ms. Nantongo's counsel had actual and apparent authority to act on her behalf. *Hillair Capital Invs. L.P. v. Smith Sys. Transp., Inc.*, 640 Fed. Appx. 49, 49 (2d Cir. 2016). Under Second Circuit precedent, an attorney-of-record is presumed to have apparent authority to bind his client, and any party challenging that authority bears the burden of proving otherwise with affirmative evidence. *Pereira v. Sonia Holdings (In re Artha Mgmt)*, 91 F.3d 326, 326 (2d Cir. 1996)("[W]e presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so. In accordance with that presumption, any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority."); *see also Alvarez v. City of New York*, 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2001)("Participating in a settlement conference with one's attorney and opposing counsel, as an example, confers such [apparent] authority on an attorney."); *see also Amerally* v. *Liberty King Produce, Inc.*, 170 A.D.3d 637, 637 (2d Dept. 2019) (finding that an attorney who participated in a mediation session with opposing counsel, even without his client, had apparent authority to settle the matter.) Further, a party may not wait an unreasonable amount of time to challenge an attorney's authority to settle after receiving settlement funds. *United States v. Intl. Bthd. of Teamsters,* 986 F.2d 15, 20 (2d Cir. 1992)(finding apparent authority when client "waited sixteen months after the date of the settlement before attempting to deny the attorney's authority").

Here, as stated earlier, the parties participated in a court-ordered mediation, including me, Ms. Nantongo and opposing counsel in attendance.  That conduct alone is sufficient to confer apparent authority on Ms. Nantongo's counsel.  Ms. Nantongo also failed to raise any objections in a reasonably timely basis.  Ms. Nantongo waited thirteen (13) months before challenging her counsel's apparent authority.  Further, Ms. Nantongo fails to rebut the presumption that counsel had apparent authority to settle her wage and hour claims.  By her conduct, Ms. Nantongo confirms this.  She has not contested receiving $28,000 for her wage and hour claims, and accepting the money.  What Ms. Nantongo does offer is confusion of the facts.  Her direct communications to me, even after filing this motion, are regarding Ms. Ms. Nantongo wanting to "salvage" her sexual harassment claims.  However, any sexual harassment claims would have been time-barred, at the latest in May 2024.  Ms. Nantongo received her funds then never called, wrote or communicated to me that she did not approve the wage and hour settlement.  Rather, Ms. Nantongo contacted me, over one year later, for an update on a sexual harassment case that did not and does not exist.

<u>Mr. Blackburn Must Be Sanctioned and Referred for Discipline</u>

On December 20, 2025, Mr. Blackburn sent me a bizarre text message regarding Ralph Charles that on its face was divorced from reality. The text message read:

Fred,

I tried calling you a few times to advise you of something that several people have brought to my attention, but for some reason, you have decided not to take my calls.  In any event, you need to tell Ralph to stop telling people that he is a licensed attorney.  He has said this on several occasions to several people, and he is representing your license as his own.

For starters, it is a felony in New York and New Jersey for him to lie to people and claim to be a licensed attorney when he is not. Secondly, I know he helps you with your work and files documents on your behalf.  He cannot use that as an example of his legal licensing.

> I honestly was not going to say anything and was going to let these people report him as they plan to, but I am attached to multiple cases with you. I do not want to be caught up in any investigation concerning Ralph and his disturbing actions.

(Charles Decl. Ex. B).  Mr. Blackburn declined to identify any of these "people" after I asked him who he was referring to.  Ralph Charles is a non-attorney and a 15-year federal employee, and has never presented himself as a licensed attorney or presented my license as his own, whatever that means.  Mr. Blackburn did not stop there. In a group text with clients in an unrelated matter, Mr. Blackburn wrote:

> Fred, I have given you all the grace I am going to extend.  You need to submit your final notice of withdrawal today.  You have Ralph pretending to be a lawyer, using your license and forging your signature (and presumably others') on notarized documents, and filing these forged instruments on court dockets.  I do not want to expose these clients to that. So you need to withdraw your representation NOW! (Charles Decl. Ex. C ).

Mr. Blackburn's misconduct only escalated from there. This time, Mr. Blackburn attacked Ralph Charles at his place of employment, the U.S. EEOC. On December 22 and December 23, 2025, Mr. Blackburn sent unhinged emails to Ralph Charles at his government email address and copied EEOC Chair Andrea Lucas, EEOC Commissioner Kalpana Kotagal, EEOC Commissioner Brittany Panuccio, in addition to a host of Ralph Charles's colleagues. (Charles Decl. Ex. D ).  Mr. Blackburn's emails alleged that Ralph Charles was misrepresenting himself as a licensed attorney, was referring EEOC cases to me (he was not), and that Mr. Blackburn (an officer of the court) was paying Ralph Charles referral fees for EEOC cases (he was not).  In order to further undermine and harass, Mr. Blackburn has developed a pattern of inappropriately using Ralph Charles's government email address.  Mr. Blackburn linked Ralph Charles's private *and* government email address to his firm's Dropbox, and then demanded that I upload all of Ms. Nantongo's records to the file.  In fact, Mr. Blackburn also used Your Honor's chambers email address to link Ralph Charles's government email address. On Tuesday, February 10, 2026, Mr.

14

Blackburn emailed, instead of ECF, this Court to make a request, again linking Ralph Charles's government email address. (Charles Decl. Ex. E ).

On January 13, 2026, Mr. Blackburn sent more unhinged and threatening text messages. (Neither I or Ralph Charles responded to Mr. Blackburn as he sent his unhinged text messages). Mr. Blackburn advised that I get good malpractice insurance, and that he was giving me 30 days to get my affairs in order. (Charles Decl. Ex. F ). The timing of these text messages makes it more than obvious that Mr. Blackburn and Ms. Nantongo have together pre-planned this false story, most likely, a promise from Mr. Blackburn to Ms. Nantongo of a big payday.

The final text message I received from Mr. Blackburn before I was forced to block his phone number was chilling, and only read: "Laugh today, cry tomorrow." (Charles Decl. Ex. G ). Again, I do not know the nature of Mr. Blackburn's personal gripes, therefore I could only interpret this message as a direct physical threat. *Even worse*, Mr. Blackburn is using this motion in the underlying case to contact my co-counsel in other actions accusing me of fraud and forgery. (Charles Decl. Ex. H ).

<u>Mr. Blackburn's History of Misconduct</u>

Making false and salacious claims is not new for Mr. Blackburn. Mr. Blackburn has been admonished or sanctioned by at least five (5) different courts for bringing salacious or false claims, falsifying case law, and having at least two of his clients sued for defamation after making extortionate demands on high-profile celebrities. Mr. Blackburn has been personally sued for defamation and infliction of emotional distress by a celebrity for publicly falsifying claims. U. S. District Judge Denise L. Cote of the Southern District of New York referred Mr. Blackburn to the SDNY Grievance Committee for discipline for his pattern of filing meritless and salacious claims

15

against celebrities in hopes of a big payday. *See Zunzorowski v. Fisher,* No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568, at *14 (S.D.N.Y. April 3, 2024)("[Mr. Blackburn] improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly.").

In *Jakes v. Youngblood,* U.S. District Judge William Stickman of the Western District of Pennsylvania described Mr. Blackburn's misconduct: "Youngblood, through attorney Blackburn, submitted a brief replete with non-existent quotations and repeated misrepresentations of actual case law.  Even more outrageously, a review of Youngblood's reply brief demonstrates that it too includes fabricated quotes and misrepresents case law.  In other words, when accused of a serious ethical violation, attorney Blackburn chose to double down." *See Jakes v. Youngblood,* No. 24-cv-1608 (WS), 2025 U.S. Dist. LEXIS 160856, at *2-3 (W.D. Pa. June 26, 2025).  In that action, Mr. Blackburn was sanctioned $5,000 for using artificial intelligence to fabricate case law, and was eventually fired by his client for making an unauthorized extortionate demand on his intended target Rev. T.D. Jakes.  In *Jones v. Combs*, No. 24-cv-1457,2025 U.S. Dist. LEXIS 54277, at *10 (S.D.N.Y. Mar. 24, 2025),  U.S. District Judge J. Paul Oetken of the Southern District of New York took the rare step of dedicating a section of his opinion as a "*Warning to Counsel Tyrone Blackburn*."  In his opinion, Judge Oetken was flabbergasted by Mr. Blackburn's statements of law. "That any licensed member of the bar would espouse such an absurd understanding of the law is not only disturbing, but shocking."  In *Facey v. Fisher*, a case filed in New York State Supreme Court, New York County, Justice Mary Rosado imposed sanctions on Mr. Blackburn noting that, "[T]he Court finds the Complaint to be malicious and aimed at embarrassing and harassing defendants."). *Facey v. Fisher,* 2025 N.Y. Misc. LEXIS 7630, at *4-5 (N.Y. County Sup. Ct. Sept. 15, 2025).   The Court sanctioned Mr. Blackburn for his malicious conduct towards the defendant.

Mr. Blackburn's Disturbing Behavior

As an officer of the court, Mr. Blackburn has had some disturbing incidents that require this Court's attention.  For example, Mr. Blackburn sent an *extremely* vile and threatening text message to a former female client that caused her to file a police report against Mr. Blackburn for harassment. (Charles Decl. Ex. I ).  Further, Mr. Blackburn is currently under indictment by the Kings County District Attorney's Office for felony assault after Mr. Blackburn ran over with his vehicle a process server who attempted to serve him in the *Cartagena* matter.  (Charles Decl. Ex. J ).  On February 24, 2026, in the *Cartagena* matter, Mr. Blackburn launched into a homophobic tirade against opposing counsel as Mr. Blackburn was defending his co-defendant's deposition. See  video:  https://drive.google.com/file/d/1P40mlI6D_W40zLBQZt2VMVLSYq2TEfsG/view Ten days later, as Mr. Blackburn was deposed in the same action, opposing counsel addressed Blackburn's comment to his co-counsel.

See video: https://drive.google.com/file/d/10KG3TDjtBjtVPsiyWNVzMIr_QOq1YjoM/view

 and he could not remember basic facts such as whether or not he represented his client.

See video: https://drive.google.com/file/d/1RncZkGV30MTXF4pSncIQ_PsmEsxJPopr/view

Lastly, and this may be the most crucial exhibit, on December 3, 2025, shortly before Mr. Blackburn begs to send me his bizarre and disturbing messages, he filed a letter of withdrawal addressed to U.S. District Judge Jamal K. Semper of the United States District Court for the District of New Jersey in an action entitled *Kertesz v. Colony Tire*, where Mr. Blackburn informed U.S. District Judge Samper that he was withdrawing from his law practice due to mental health struggles. (Charles Decl. Ex. K ).

17

CONCLUSION

In light of the foregoing, I respectfully request that the Court deny Ms. Nantango's motion to vacate the December 9, 2024 satisfaction of judgment entered in this action. Ms. Nantongo's motion is untimely pursuant to FRCP 60(b)(3), fails to plead any claim for relief pursuant to FRCP 60(d), and fails to state any claim for relief due to fraud or forgery. Further, Ms. Nantongo's motion entirely misstates the law on attorney authority, and should be rejected by the Court. Also, the Court should sanction Tyrone Blackburn and refer him to the Eastern District of New York Grievance Committee for filing this motion for the sole improper purpose of harassment and knowingly making false statements to the Court in order to further his harassment. We thank the Court for your consideration of this matter.

Dated: New York, New York
　　　April 17, 2026

　　　　　　　　　　　　　　　　CHARLES LAW, P.C.

　　　　　　　　　　　　　　　　/s/ Fred V. Charles
　　　　　　　　　　　　　　　　244 Fifth Ave., Suite 27-7
　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　Tel: (646) 494-2662
　　　　　　　　　　　　　　　　Emaill: fcharles@charleslawpc.com

18