**Tyrone Blackburn, ESQ**
**Attorney NJS-ID # 232602020**
**1242 East 80th Street, 3rd Floor**
**Brooklyn, NY 11236**
**(347) 342-7432**
*Attorney for Plaintiff,* Olivia Nantongo

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVIA NANTONGO on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>V.<br><br>NATIONWIDE MORTGAGE BANKERS INC.<br>　　　　　　　Defendant. | CASE NO. 22-cv-04974<br>Civil Action<br><br>Reply Memorandum in<br>Further Support |

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER
MOTION TO VACATE THE DECEMBER 9, 2024, SATISFACTION OF JUDGMENT AND
IN OPPOSITION TO DEFENDANT NATIONWIDE MORTGAGE BANKERS, INC.'S AND
FRED V. CHARLES, ESQ.'S OPPOSITIONS THERETO

By:
Tyrone A. Blackburn, Esq.

TABLE OF CONTENTS

PRELIMINARY STATEMENT

ARGUMENT

I.      THE RULE 60(b)(3) TIMELINESS ARGUMENT DOES NOT BAR PLAINTIFF'S PRINCIPAL CLAIM UNDER RULE 60(d)(3), WHICH IS NOT SUBJECT TO ANY TIME LIMITATION

II.     RULE 60(d)(3) ENCOMPASSES FRAUD BY AN OFFICER OF THE COURT — INCLUDING PLAINTIFF'S OWN FORMER COUNSEL

III.    THE UNDISPUTED FORENSIC EVIDENCE SATISFIES THE CLEAR AND CONVINCING STANDARD

IV.     MR. CHARLES DID NOT HAVE AUTHORITY — ACTUAL OR APPARENT — TO SETTLE MS. NANTONGO'S SEXUAL HARASSMENT CLAIMS

    A.  Mr. Charles Lacked Actual Authority

    B.  Apparent Authority Cannot Supply Authorization for the Release of Unfiled Claims

    C.  The Thirteen-Month Delay Argument Is Foreclosed by the Doctrine of Fraudulent Concealment and Cannot Be Recast as Ratification

V.      CHARLES'S TIME-BAR ARGUMENT AS TO THE SEXUAL HARASSMENT CLAIMS IS MERITLESS AND CONTRADICTED BY NATIONWIDE'S OWN ADMISSIONS

VI.     MR. CHARLES'S PERSONAL ATTACKS ON PLAINTIFF'S COUNSEL DO NOT CONSTITUTE A LEGAL DEFENSE

VII.    NATIONWIDE'S OWN ADMISSIONS CORROBORATE PLAINTIFF'S CLAIM

CONCLUSION

2

TABLE OF AUTHORITIES

**Cases**

- *Alvarez v. City of New York*, 146 F. Supp. 2d 327 (S.D.N.Y. 2001)
- *Anderson v. New York*, No. 11-CV-2735, 2012 WL 4513410 (S.D.N.Y. Oct. 2, 2012)
- *Best v. Barbarotta*, No. 18-CV-3380, 2019 WL 1331176 (E.D.N.Y. Mar. 25, 2019)
- *Blinkoff v. City of Torrington*, No. 23-717, 2025 WL 502041 (2d Cir. Feb. 14, 2025)
- *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir. 1988)
- *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985)
- *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)
- *Commercial Union Ins. Co. v. Lord*, 649 F. App'x 68 (2d Cir. 2016)
- *Dechberry v. New York City Fire Department*, 124 F. Supp. 3d 131 (E.D.N.Y. 2015)
- *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024)
- *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57 (2d Cir. 1986)
- *Febus v. Guardian First Funding Group, LLC*, 90 F. Supp. 3d 240 (S.D.N.Y. 2015)
- *Giurca v. Montefiore Health System, Inc.*, No. 24-1096, 2025 WL 2658786 (2d Cir. Sept. 17, 2025)
- *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988)
- *Gomez v. City of New York*, 805 F.3d 419 (2d Cir. 2015)
- *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995)
- *Hall v. Le Claire*, No. 10-CV-3877 (LAP), 2024 WL 4449639 (S.D.N.Y. Oct. 9, 2024)
- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
- *In re Artha Management, Inc.*, 91 F.3d 326 (2d Cir. 1996)
- *In re Dreier LLP*, 450 B.R. 452 (Bankr. S.D.N.Y. 2011)
- *In re Old Carco LLC*, 423 B.R. 40 (Bankr. S.D.N.Y. 2010)
- *Long v. Abbott Mortgage Corp.*, 459 F. Supp. 108 (D. Conn. 1978)
- *Majid v. Fielitz*, 700 F. Supp. 704 (S.D.N.Y. 1988)
- *Marco Destin, Inc. v. Levy*, 690 F. Supp. 3d 182 (S.D.N.Y. 2023), *aff'd*, 111 F.4th 214 (2d Cir. 2024)
- *Mazzei v. The Money Store*, 62 F.4th 88 (2d Cir. 2023)
- *Michaud v. Michaud*, 932 F.2d 77 (1st Cir. 1991)
- *Pereira v. Sonia Holdings (In re Artha Management, Inc.)*, 91 F.3d 326 (2d Cir. 1996)
- *Reichmann v. Neumann*, 553 F. Supp. 2d 307 (S.D.N.Y. 2008)
- *Soto v. Cnty. of Westchester*, No. 08-CV-5066 (AJN), 2018 WL 527977 (S.D.N.Y. Jan. 22, 2018)
- *United States v. International Brotherhood of Teamsters*, 986 F.2d 15 (2d Cir. 1993)
- *United States v. Philley*, 357 F. App'x 179 (10th Cir. 2009)
- *Warren v. Garvin*, 219 F.3d 111 (2d Cir. 2000)

**Rules**

- Fed. R. Civ. P. 60(b)(3)
- Fed. R. Civ. P. 60(c)(1)
- Fed. R. Civ. P. 60(d)(3)
- Restatement (Third) of Agency § 4.06

3

## PRELIMINARY STATEMENT

Plaintiff Olivia Nantongo ("Ms. Nantongo" or "Plaintiff") respectfully submits this reply memorandum of law in further support of her motion to vacate the December 9, 2024 satisfaction of judgment and in response to the oppositions filed by Defendant Nationwide Mortgage Bankers, Inc. ("Nationwide") (ECF No. 62) and Fred V. Charles, Esq. ("Mr. Charles"), appearing pro se and on behalf of Charles Law, P.C. (ECF No. 63).

Neither opposition defeats Ms. Nantongo's motion. Nationwide's brief — which is five pages long, acknowledges that Ms. Nantongo received no consideration for the release of her sexual harassment claims, and concedes the total settlement payment of $45,000 — inadvertently corroborates the core of Plaintiff's fraud-on-the-court claim while arguing that Plaintiff's grievance is merely a matter between attorney and client. Nationwide cannot insulate itself from Rule 60(d)(3) by arguing that the misconduct was committed by Plaintiff's own former counsel, particularly when that counsel — as an officer of the court — forged settlement documents that were filed with this Court and used to procure a judicial order terminating this action. Mr. Charles's opposition, meanwhile, is not a legal brief. It is a prolonged personal attack on Plaintiff's current counsel, riddled with fabricated case citations (as Plaintiff has separately documented in her motion for sanctions at ECF No. 64), unsupported factual allegations, and ad hominem argument that has no bearing on the dispositive legal questions before the Court.

What neither opposition does — because neither can — is provide a coherent legal answer to the central fact that forms the foundation of this motion: Ms. Nantongo did not sign the Acceptance of Rule 68 Offer of Judgment that was filed with this Court in her name, released her claims, and terminated this action. That document bore a forged electronic signature. A licensed handwriting and forensic document examiner has confirmed this. A forged instrument filed with a federal court to obtain an order of dismissal is, by definition, a fraud on the court. The motion to vacate should be granted.

## ARGUMENT

I. **THE RULE 60(b)(3) TIMELINESS ARGUMENT DOES NOT BAR PLAINTIFF'S PRINCIPAL CLAIM UNDER RULE 60(d)(3), WHICH IS NOT SUBJECT TO ANY TIME LIMITATION**

Mr. Charles devotes the opening section of his opposition to the argument that Ms. Nantongo's Rule 60(b)(3) motion is untimely because it was filed on January 22, 2026 — more than one year after the satisfaction of judgment was entered on December 9, 2024. Nationwide

4

echoes this argument. This contention is legally irrelevant to the relief Ms. Nantongo actually seeks.

Rule 60(b)(3) provides a ground for relief from a final judgment based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," and is subject to an "absolute" one-year limitation period. Warren v. Garvin, 219 F.3d 111, 118 (2d Cir. 2000). Plaintiff does not dispute that any free-standing Rule 60(b)(3) motion against Nationwide for fraud by an opposing party would be untimely. Plaintiff's primary basis for relief, however, is Rule 60(d)(3), which authorizes this Court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Rule 60(d)(3) contains no time bar: "This rule does not limit a court's power to:(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or(3) set aside a judgment for fraud on the court." Id. The one-year limitation upon which Mr. Charles and Nationwide rely is simply inapplicable to the claim Ms. Nantongo is pressing. *See* Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944) (courts may vacate judgments obtained by fraud upon the court "regardless of the term of their"); *see also* Marco Destin, Inc. v. Levy, 690 F. Supp. 3d 182, 190 (S.D.N.Y. 2023) (fraud on the court claims "exists to protect the integrity of the judicial process," and therefore "cannot be time-barred"), *aff'd*, 111 F.4th 214 (2d Cir. 2024); Commercial Union Ins. Co. v. Lord, 649 F. App'x 68, 70 (2d Cir. 2016) (confirming that Rule 60(d)(3) "does not limit a court's power to ... set aside a judgment for fraud on the court.") and is not subject to Rule 60(b)'s one-year limitation period).

Moreover, even if Rule 60(b)(3) were at issue, the one-year clock does not run from the date of the challenged judgment when the fraud was concealed from the party seeking relief. As the Court of Appeals for the Second Circuit has stated, "[t]he essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60 (2d Cir. 1986) (citing Cerbone v. Intern. Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985), quoting Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 113 (D. Conn. 1978)). Thus, if equitable tolling is applied, a statute of limitations does not begin to run until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on

5

notice." <u>Cerbone</u>, 768 F.2d at 48 (quoting <u>City of Detroit v. Grinnell Corp.,</u> 495 F.2d 448, 461 (2d Cir. 1974)); <u>Majid v. Fielitz</u>, 700 F. Supp. 704, 706-07 (S.D.N.Y. 1988).

Ms. Nantongo did not know — and could not have known through the exercise of reasonable diligence — that Mr. Charles had forged her signature on the Acceptance of Rule 68 Offer of Judgment until Plaintiff's counsel independently reviewed the docket in early 2026. Mr. Charles, as an officer of the court, concealed the forged settlement documents he filed. Ms. Nantongo was never shown the settlement agreement, never informed that her sexual harassment claims had been extinguished, and continued to contact Mr. Charles about those very claims after the fact — affirmative evidence that she had not been apprised of sufficient facts to put her on notice of any wrong. The limitations period, to whatever extent it applies, did not begin to run until Plaintiff's counsel uncovered the forgery in early 2026, rendering the January 22, 2026, filing timely. The timeliness arguments advanced by both Nationwide and Mr. Charles accordingly fail.

## II.    RULE 60(d)(3) ENCOMPASSES FRAUD BY AN OFFICER OF THE COURT — INCLUDING PLAINTIFF'S OWN FORMER COUNSEL

Nationwide contends that Rule 60(d)(3) "only applies to fraud on the court committed by an opposing party" (ECF No. 62 at 4), and that because Ms. Nantongo's allegations are directed at her own former attorney rather than Nationwide, no fraud on the court is stated. This argument misreads the governing authority.

Rule 60(d)(3) is not limited to fraud by an adverse party. Relief under Rule 60(d)(3) is "limited to fraud which seriously affects the integrity of the normal process of adjudication." <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 559 (2d Cir. 1988). The operative phrase is "fraud on the court" — a distinct concept that "embraces "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." <u>Hadges v. Yonkers Racing Corp.</u>, 48 F.3d 1320, 1325 (2d Cir. 1995) (internal quotation marks and citation omitted); <i>see also</i> <u>Marco Destin, Inc. v. Levy</u>, 111 F.4th 214, 218 (2d Cir. 2024); <u>Blinkoff v. City of Torrington</u>, No. 23-717, 2025 U.S. App. LEXIS 3494, at *5-6 (2d Cir. Feb. 14, 2025).

To sustain a Rule 60(d)(3) motion, the movant must demonstrate "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." <u>Hadges</u>, 48 F.3d at 1325 (internal citations omitted). Such fraud prevents

6

a party from fully and fairly presenting her case before the court. *See* <u>Anderson v. New York</u>, 2012 U.S. Dist. LEXIS 142628, 2012 WL 4513410, at *4 (S.D.N.Y. Oct. 2, 2012);* <u>Hall v. Claire</u>, No. 10-CV-3877 (LAP), 2024 U.S. Dist. LEXIS 184379, at *9 (S.D.N.Y. Oct. 9, 2024). The phrase "officers of the court" within the meaning of this doctrine expressly includes attorneys.* See <u>Gleason</u>, 860 F.2d at 560. The Second Circuit has consistently recognized that the fraud-on-the-court doctrine reaches misconduct by attorneys — even the plaintiff's own attorney — when that misconduct defiles the judicial process itself. <u>Mazzei v. The Money Store</u>, 62 F.4th 88, 93-94 (2d Cir. 2023) (fraud on the court encompasses fraud "perpetrated by officers of the court"). This is precisely the conduct at issue here: Mr. Charles, acting as an officer of this Court, filed a forged instrument in Ms. Nantongo's name that corrupted this Court's ability to perform its impartial adjudicatory function — the paradigmatic case of fraud on the court under <u>Hadges</u>, <u>Mazzei</u>, and <u>Hall</u>.

Significantly, courts in this Circuit have applied precisely this principle to the scenario of an attorney forging a client's signature on settlement documents. In <u>Soto v. Cnty. of Westchester,</u> No. 08-CV-5066 (AJN), 2018 WL 527977 (S.D.N.Y. Jan. 22, 2018), the court recognized that when an attorney acting as an officer of the court "forge[s] a client's signature on settlement documents," such conduct "could constitute a fraud on the court" under Second Circuit precedent. <u>Id</u>. Similarly, in <u>In re Old Carco LLC</u>, 423 B.R. 40 (S.D.N.Y. 2010), the court held that attorneys, as officers of the court, have a duty of honesty and integrity in their dealings with the tribunal, and that "court, the lawyer is deemed to have "perpetrate[d] a fraud upon the court" — particularly where the attorney "insert[ed] a false or forged document into the record." <u>Id</u>.

Here, Mr. Charles was an officer of this Court. He filed a document bearing Ms. Nantongo's forged signature with this Court. That forged document was accepted by the Court, entered on the docket, and used as the basis for the termination of this action. The judicial machinery of this Court was directly implicated: the Court could not perform its impartial function of adjudging Ms. Nantongo's claims because the instrument purporting to settle them was a forgery. This is not, as Nationwide characterizes it, a mere "miscommunication between attorney and client." (ECF No. 62 at 2). It is the filing of a forged document with a federal court to obtain a judicial order — which is, by any measure, the defilement of the court contemplated by Rule 60(d)(3), <u>Hazel-Atlas</u>, <u>Soto</u>, and <u>In re Old Carco</u>.

While it is true that "[f]raud involving injury to a single litigant" generally does not rise to the level of fraud upon the court itself, <u>Gleason</u>, 860 F.2d at 560, the forgery at issue here is not

merely a fraud on Ms. Nantongo as a litigant — it is a fraud on the Court itself. Mr. Charles did not merely deceive his client; he fabricated a court filing, submitted it to this tribunal under his signature as an officer of the court, and induced this Court to enter a judgment of termination premised on a document that was legally void. <u>Gleason</u> involved alleged perjury and nondisclosure by a party during litigation — conduct that could have been uncovered and addressed in the prior proceeding. The forgery of a client's signature on a settlement instrument and the filing of that forged instrument with the Court is categorically different: it directly corrupts the instrument through which this Court exercised its judicial power. Ms. Nantongo had no opportunity to uncover the forgery during the underlying proceeding because the forged document was filed in her name, without her knowledge, by her own attorney — the very person she trusted to represent her interests before this Court. <u>Gleason</u> does not bar her claim.

### III.    THE UNDISPUTED FORENSIC EVIDENCE SATISFIES THE CLEAR AND CONVINCING STANDARD

Nationwide argues that Ms. Nantongo has failed to demonstrate fraud on the court by clear and convincing evidence. (ECF No. 62 at 3). This argument cannot withstand scrutiny on the present record.

The standard for relief under Rule 60(d)(3) requires the movant to demonstrate "by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant [were] ... of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." <u>Giurca v. Montefiore Health Sys., Inc.</u>, 2025 WL 2658786, at 2 (2d Cir. 2025) *(quoting* <u>Mazzei</u>, 62 F.4th at 93-94). Ms. Nantongo satisfies this standard.

**First**, Mr. Charles filed a document bearing Ms. Nantongo's electronic signature that she did not sign and did not authorize. This is the direct testimony of Ms. Nantongo herself, corroborated by the conclusions of a licensed forensic document examiner who determined that the electronic signatures on the settlement documents are not authentic. Nationwide notes that the expert "has requested to review additional documents to determine authenticity" (ECF No. 62 at 1) — but Nationwide cannot invoke the expert's need for further materials as evidence against Plaintiff when those materials are in the possession and control of Nationwide and Mr. Charles. Plaintiff has sought access to the original files. Their failure to produce them is not a deficiency in Plaintiff's proof.  The Second Circuit has recognized that retention of a handwriting expert to

8

examine a disputed signature demonstrates "a claim of forgery" that courts are obligated to investigate fully rather than summarily dismiss. Calloway v. Marvel Entm't Grp., 854 F.2d 1452 (2d Cir. 1988). Courts in this Circuit have applied exactly this principle in settlement forgery disputes: in Reichmann v. Neumann, 553 F. Supp. 2d 307, 315 (S.D.N.Y. 2008), the court credited handwriting expert testimony as credible evidence sufficient to support forgery allegations in a settlement context — precisely the posture presented here. Moreover, in Best v. Schecter, Not Reported in Fed. Supp. (2019), the court recognized that denying a plaintiff any opportunity to review a settlement agreement before it is filed constitutes potential misconduct cognizable under Rule 60(b)(3) — and here, Ms. Nantongo was never shown the settlement agreement at all before Mr. Charles filed it in her name.

**Second**, the filing of the forged instrument prevented Ms. Nantongo from "fully and fairly presenting" her case. Giurca, 2025 WL 2658786, at 2. Ms. Nantongo never had the opportunity to present her sexual harassment claims — claims that she maintained throughout the litigation and wished to pursue. Mr. Charles settled the action without authority, filed a forged acceptance in her name, and caused this Court to enter a satisfaction of judgment that extinguished rights Ms. Nantongo had never agreed to surrender.

**Third**, a forged document is void *ab initio* under settled law. A forged signature renders an instrument a legal nullity. A judgment procured based on a void instrument cannot stand. There is nothing that Nationwide or Mr. Charles can argue that cures a forgery.

IV.    **MR. CHARLES DID NOT HAVE AUTHORITY — ACTUAL OR APPARENT — TO SETTLE MS. NANTONGO'S SEXUAL HARASSMENT CLAIMS**
    A.  Mr. Charles Lacked Actual Authority

Actual authority to settle a client's case requires the client's express or implied consent to the specific settlement terms. Pereira v. Sonia Holding*s (*In re Artha Mgmt*.)*, 91 F.3d 326, 328-29 (2d Cir. 1996). Critically, unlike many other acts that an attorney undertakes on a client's behalf, the decision to settle or otherwise dismiss claims "rests with the client" and is "not automatically bestow[ed] the authority to settle a case on retained counsel." Id. at 329. Ms. Nantongo agreed to accept $28,000 to settle her wage and hour claims. She never authorized Mr. Charles to settle, release, or extinguish her sexual harassment claims — claims that she did not know were encompassed by the settlement agreement. Her post-settlement emails to Mr. Charles requesting a status update on those claims are compelling proof on their face that she did not believe those

claims had been resolved. Mr. Charles cannot point to a single written authorization from Ms. Nantongo to release those claims, because none exists.

Although the Second Circuit has held that courts "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so," this presumption is expressly rebuttable. In re Artha Mgmt., 91 F.3d at 329; *see also* United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993) ("The burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial."). Febus v. Guardian First Funding Group, LLC, 90 F. Supp. 3d 240, 246 (S.D.N.Y. 2015), confirms that the presumption of authority can be challenged, with the burden falling on the challenging party to prove by affirmative evidence that the attorney lacked such authority — the exact burden Plaintiff has met through the forensic expert's report. Crucially, where the attorney has forged the client's signature, the forgery itself destroys any apparent authority because the forged instrument falls entirely outside the scope of permissible attorney representation: a "client not bound by release to which his attorney forged the client's signature where the attorney lacked authority to settle the action." In re Dreier LLP, 450 B.R. 452, 466 (S.D.N.Y. 2011). Plaintiff has submitted affirmative forensic evidence — a licensed handwriting expert's report concluding that the electronic signatures on the settlement documents are not authentic — sufficient to rebut that presumption. The burden accordingly shifts to Mr. Charles to produce affirmative evidence that Ms. Nantongo authorized the settlement of her sexual harassment claims. He has produced none.

Where, as here, "a former attorney and his client dispute the giving of authority, courts generally require the holding of an evidentiary hearing on the question of authorization." Michaud v. Michaud, 932 F.2d 77, 81 (1st Cir. 1991); see also Gomez v. City of N.Y., 805 F.3d 419, 424 (2d Cir. 2015) ("[a]fter such a hearing, of course, the court can resolve any conflict in the testimony; it may, for example, disbelieve the client. But such a determination cannot be made without first giving the client a fair opportunity to have his say.") (quoting Michaud, 932 F.2d at 81)). The Eastern District of New York has applied precisely this rule in cases factually analogous to Ms. Nantongo's. In Dechberry v. New York City Fire Department, 124 F. Supp. 3d 131 (E.D.N.Y. 2015), the court held an evidentiary hearing where a plaintiff claimed her attorney settled her case without her knowledge and forged her signature on settlement documents — demonstrating that courts in this District treat such allegations as warranting a hearing, not summary dismissal. Under Gomez, Michaud, and Dechberry, Ms. Nantongo is entitled to an

10

evidentiary hearing at which she may present her evidence and be heard before this Court resolves any factual dispute regarding the scope of Mr. Charles's authority. To deny vacatur without such a hearing — on a record where the client has produced expert testimony disputing the authenticity of the very signatures that purportedly authorized the settlement — would be to make precisely the credibility determination that Gomez prohibits without first giving Ms. Nantongo her day in court.

### B. Apparent Authority Cannot Supply Authorization for the Release of Unfiled Claims

Apparent authority arises when a client's words or conduct communicate to the adverse party a reasonable belief that the attorney possesses authority to conclude a settlement. Alvarez v. City of New York, 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2001). But apparent authority cannot supply authorization where the underlying claims were never pleaded in the pending action and Nationwide could have formed no reasonable belief — from anything Ms. Nantongo communicated — that Mr. Charles was authorized to settle them.

This action involved, on its face, only wage and hour claims under the FLSA and the NYLL. No sexual harassment claims were ever filed in any court. Nationwide concedes this: "Nantongo's case here was strictly for alleged violations of the FLSA and NYLL." (ECF No. 62 at 2 n.2). There is no basis on which Nationwide could have formed a reasonable belief — from Ms. Nantongo's conduct — that Mr. Charles was authorized to settle claims that were not pending and had never been asserted. Moreover, a forged document cannot itself be the basis for apparent authority because it is void — it represents nothing that Ms. Nantongo communicated or authorized.

### C. The Thirteen-Month Delay Argument Is Foreclosed by the Doctrine of Fraudulent Concealment and Cannot Be Recast as Ratification.

Mr. Charles and Nationwide argue that Ms. Nantongo waited an unreasonable thirteen months before challenging the settlement. This argument ignores the fundamental reason for the delay: Ms. Nantongo did not know she had been defrauded. She was told that her wage and hour case settled for $28,000. She received $28,000. She was never shown the settlement agreement releasing her sexual harassment claims. She was never informed that those claims had been extinguished. She continued to contact Mr. Charles about her sexual harassment case because she had no reason to know those claims were gone.

To the extent Nationwide or Mr. Charles attempts to recast the delay argument as one of ratification — contending that Ms. Nantongo's receipt and use of the $28,000 constitutes binding

11

acceptance of all settlement terms — that argument also fails. Ratification of an agent's unauthorized act requires that the principal have actual knowledge of the material terms of the transaction being ratified. A principal cannot ratify what she does not know. *See* Restatement (Third) of Agency § 4.06 (ratification requires that the "principal have actual knowledge of material facts"). Here, Ms. Nantongo knew she was accepting $28,000 in settlement of her wage and hour claims. She did not know — and had no means of knowing — that the settlement simultaneously extinguished her sexual harassment claims through a document she had never signed. Her acceptance of funds for the wage and hour component of the settlement cannot constitute ratification of the unauthorized release of separate, unfiled claims of which she was never informed. *See* Dechberry, 124 F. Supp. 3d at 147 (a client's receipt of settlement funds does not, without more, ratify an attorney's unauthorized acts where the client lacked knowledge of the full scope of the transaction). The ratification doctrine requires informed assent; it does not permit a wrongdoer to bootstrap a client's acceptance of partial payment into a waiver of the very rights she was never told were being surrendered.

Equity does not permit a wrongdoer to benefit from the concealment of his own wrong. The argument that Ms. Nantongo is barred by delay from challenging conduct that was actively concealed from her is not a legal defense; it is an attempt to immunize fraud by arguing that the victim should have discovered it sooner. It should be rejected.

V. **CHARLES'S TIME-BAR ARGUMENT AS TO THE SEXUAL HARASSMENT CLAIMS IS MERITLESS AND CONTRADICTED BY NATIONWIDE'S OWN ADMISSIONS**

Charles argues in passing that Ms. Nantongo's sexual harassment claims were already time-barred by December 9, 2024, and therefore she suffered no cognizable injury from their release. This argument fails for three independent reasons.

First, the exact dates of the alleged harassment were never developed in this proceeding; dismissing those claims as time-barred without a factual record is premature. Diaz-Roa v. Hermes Law, P.C., 757 F. Supp. 3d 498, 510 (S.D.N.Y. 2024) (court may not dismiss undated harassment allegations as time-barred at the pleading stage without evidence establishing the dates of the relevant conduct). Second, even if the sexual harassment claims had lapsed, the forgery of Ms. Nantongo's signature on the settlement document remains independently improper and

independently constitutes fraud on the court — the viability of the underlying claims has no bearing on whether a forged instrument may be used to obtain a federal court order.

Third, and most tellingly, Nationwide itself paid a portion of the $45,000 settlement expressly to resolve "Nantongo's unfiled claims of alleged sexual harassment." (ECF No. 62 at 4 n.3). Nationwide's own characterization of those claims as having settlement value is a judicial admission that they were viable — not time-barred — as of December 2024.

VI. **MR. CHARLES'S PERSONAL ATTACKS ON PLAINTIFF'S COUNSEL DO NOT CONSTITUTE A LEGAL DEFENSE**

The bulk of Mr. Charles's opposition consists of personal attacks on Plaintiff's counsel. These include allegations about text messages, references to unrelated litigation, claims about deposition conduct, assertions about prior sanctions rulings in matters involving different parties, and even a suggestion that Plaintiff's counsel is under criminal indictment. None of this constitutes a defense to the motion before the Court.

The dispositive questions are: (1) Did Ms. Nantongo sign the Acceptance of Rule 68 Offer of Judgment? (2) Did Mr. Charles have authority to settle Ms. Nantongo's sexual harassment claims? (3) Does the filing of a forged acceptance in a client's name constitute fraud on the court? The forensic evidence and the record answer the first two questions in the negative and the third in the affirmative. Personal attacks on Mr. Blackburn change none of these answers.

The Court should additionally note that Mr. Charles's opposition contains at least one fabricated citation — "<u>Linkco Inc. v. Naoyuki Akikusa</u>, 357 Fed Appx. 180, 181 (2d Cir. 2010)" at page 9 — which resolves upon independent verification to <u>United States v. Philley</u>, 357 F. App'x 179 (10th Cir. 2009), a Tenth Circuit criminal sentencing appeal with no civil procedure content whatsoever. This fabrication is addressed in Plaintiff's separately filed motion for sanctions (ECF No. 64). The Court should independently verify any authority cited by Mr. Charles before crediting it.

VII. **NATIONWIDE'S OWN ADMISSIONS CORROBORATE PLAINTIFF'S CLAIM**

Nationwide's brief, while ostensibly opposing the motion, contains admissions that are fatal to any argument that the satisfaction of judgment should stand.

Nationwide acknowledges that it paid a total of $45,000 to resolve this action: $28,000 to Ms. Nantongo, $12,000 to Mr. Charles in counsel fees, and $5,000 to opt-in Plaintiff Sharon

13

Graham — a portion of which was expressly paid to resolve "Nantongo's unfiled claims of alleged sexual harassment." (ECF No. 62 at 4 n.3). Nationwide thus concedes that the settlement encompassed sexual harassment claims that were never filed, never before this Court, and never authorized by Ms. Nantongo to be released. Of the $45,000 paid, Ms. Nantongo received only $28,000 — and received no separate consideration whatsoever for the release of her sexual harassment claims, claims whose settlement value was never communicated to her and for which she was never given any opportunity to negotiate.

A release for which no consideration was given cannot be enforced. The settlement, to whatever extent it purports to release Ms. Nantongo's sexual harassment claims, is unenforceable as to those claims on consideration grounds alone — wholly apart from the forgery. Nationwide's candid acknowledgment that it paid to extinguish claims Ms. Nantongo never authorized to be extinguished, for consideration Ms. Nantongo never received, is independently sufficient to warrant vacatur.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's opening and supplemental submissions (ECF Nos. 48, 61), Plaintiff Olivia Nantongo respectfully requests that this Court:

1. Grant Plaintiff's motion to vacate the December 9, 2024, satisfaction of judgment pursuant to Federal Rule of Civil Procedure 60(d)(3).
2. Restore this action to the active docket.
3. In the alternative, hold an evidentiary hearing pursuant to Gomez v. City of New York, 805 F.3d 419 (2d Cir. 2015), and Dechberry v. New York City Fire Department, 124 F. Supp. 3d 131 (E.D.N.Y. 2015), to resolve the disputed factual question of whether Mr. Charles had authority to settle Ms. Nantongo's sexual harassment claims.
4. Refer the matter of the forged settlement documents to the appropriate disciplinary authority for investigation of Mr. Charles's conduct as an officer of this Court; and
5. Grant such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
April 21, 2026

Respectfully submitted,

_/s/Tyrone A. Blackburn, Esq._
Tyrone A. Blackburn, Esq.
Counsel for Plaintiff

14