Tyrone Blackburn, ESQ
Attorney NJS-ID # 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
(347) 342-7432
*Attorney for Plaintiff,* Olivia Nantongo

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVIA NANTONGO on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>V.<br><br>NATIONWIDE MORTGAGE BANKERS INC.<br>     Defendant. | CASE NO. 22-cv-04974<br>Civil Action<br><br>Plaintiff's Memorandum of Law in Support of Motion for Sanctions Against Fred V. Charles, Esq. and Charles Law, P.C. |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS
AGAINST FRED V. CHARLES, ESQ. AND CHARLES LAW, P.C.

By:
Tyrone A. Blackburn, Esq.

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT

STATEMENT OF FACTS

    A.  The First Fabrication: ECF No. 54 — "Mpala v. Segarra" (February 7, 2026)

    B.  The Second Fabrication: ECF No. 63 — "Linkco ... 357 Fed. Appx. 180" (April 17, 2026)

    C.  The Pattern Confirms Willful Conduct or Reckless Indifference

LEGAL STANDARD

    i.      The Court's Inherent Authority

    ii.     28 U.S.C. § 1927

    iii.    Federal Rule of Civil Procedure 11

ARGUMENT

    I.      THE TWO FABRICATED CITATIONS WARRANT SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY

        a.  The Fabrications Are Established Beyond Dispute

        b.  Bad Faith Is Compelled by the Totality of Circumstances

        c.  Courts Have Consistently Imposed Sanctions for This Conduct, and This Court Should Do the Same

    II.     SANCTIONS UNDER 28 U.S.C. § 1927 ARE INDEPENDENTLY WARRANTED

    III.    THE COURT SHOULD REFER THIS MATTER TO THE GRIEVANCE COMMITTEE AND EXERCISE ITS DISCIPLINARY AUTHORITY

CONCLUSION

## TABLE OF AUTHORITIES

Cases

- *Amerisource Corp. v. Rx USA International, Inc.*, No. 02-CV-2514, 2010 WL 2730748 (E.D.N.Y. July 6, 2010)
- *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341 (E.D.N.Y. 2025)
- *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997)
- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991)
- *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998)
- *Heaston v. City of New York*, No. 19-CV-5569 (PKC)(VMS), 2022 WL 182069 (E.D.N.Y. Jan. 20, 2022)
- *Huebner v. Midland Credit Management, Inc.*, 897 F.3d 42 (2d Cir. 2018)
- *In re Snyder*, 472 U.S. 634, 105 S. Ct. 2874 (1985)
- *Johnson v. Turnbill*, 715 F. App'x 84 (2d Cir. 2018)
- *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180 (2d Cir. 2010)
- *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363 (E.D.N.Y. 2013)
- *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023)
- *Mpala v. Segarra*, 718 F. App'x 84 (2d Cir. 2018)
- *Perez v. Evans*, No. 24-CV-356 (VSB)(SN), 2025 WL 2726792 (S.D.N.Y. Sept. 25, 2025)
- *Ransmeier v. Mariani*, 718 F.3d 64 (2d Cir. 2013)
- *Suggs v. Capital Cities/ABC, Inc.*, No. 86 Civ. 2774 (LBS), 1990 WL 182314 (S.D.N.Y. Apr. 24, 1990)
- *Thornock v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 25-CV-56, 2025 WL 1900314 (E.D. Va. July 9, 2025)
- *United States v. Philley*, 357 F. App'x 179 (10th Cir. 2009)
- *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009)
- *Yaroshevsky v. Karlin*, No. 25-CV-2747, 2026 WL 522624 (E.D.N.Y. Feb. 23, 2026)

Statutes

- 28 U.S.C. § 1927

Rules

- Fed. R. Civ. P. 11
- Fed. R. Civ. P. 11(b)
- Fed. R. Civ. P. 11(b)(2)
- Fed. R. Civ. P. 11(c)(2)

Other Authorities

- New York Rule of Professional Conduct 3.3(a)(1)
- New York Rule of Professional Conduct 8.4(c)

## PRELIMINARY STATEMENT

This motion arises from a pattern of conduct that strikes at the foundational integrity of the judicial process: the submission to this Court of fabricated legal citations in not one, but two successive court filings. Fred V. Charles, Esq. ("Mr. Charles"), appearing pro se and on behalf of his firm Charles Law, P.C. ("Charles Law"), filed a letter with this Court on February 7, 2026 (ECF No. 54) and a memorandum of law on April 17, 2026 (ECF No. 63), each of which cited, as binding or persuasive Second Circuit authority, a case that does not exist at the citation given. In each instance, the reporter volume and page number cited by Mr. Charles belong to an entirely unrelated decision from a different circuit addressing a wholly different area of law — the telltale signature of AI-generated citation hallucination.

The Court should understand the context in which these fabrications arise. Mr. Charles is the former attorney at the center of the underlying fraud-on-the-court claim that his opposition papers purport to defend. According to Plaintiff's forensic evidence, Mr. Charles retained Olivia Nantongo — a vulnerable, foreign-born client — in June or July 2022 to pursue federal employment claims for unpaid wages, sexual harassment, and gender-motivated violence against Nationwide Mortgage Bankers, Inc. Without Ms. Nantongo's knowledge, without contacting her, and without obtaining her consent, Mr. Charles accepted a Rule 68 Offer of Judgment for $20,000 — of which he retained $12,000 in fees paid directly by Defendant, leaving Ms. Nantongo with $8,000 net from the court-filed judgment. Ms. Nantongo did not learn that her case had been "settled" from her attorney. She learned it from Ralph Charles — Mr. Charles's non-lawyer brother — who called her by telephone and subsequently mailed her a check. The signatures on the court-filed settlement documents were found by certified forensic document examiner Kathy S. Carlson, C.F.D.E., C.Q.D.E., of Western Forensic Document Examiner, LLC, to be forensically identical across four documents spanning nearly three years (2021–2024) — a forensic impossibility consistent only with electronic cut-and-paste manipulation. It is the judgment procured through those forged documents — filed directly with this Court and resulting in entry of a clerk's judgment — that Plaintiff seeks to vacate, and it is in opposing that motion that Mr. Charles submitted the fabricated citations addressed herein.

What makes Mr. Charles's second fabrication particularly egregious is that it is wrong on every verifiable axis simultaneously. The citation "Linkco Inc. v. Naoyuki Akikusa, 357 Fed. Appx. 180, 181 (2d Cir. 2010)" resolves, upon independent verification, to United States v.

4

<u>Philley</u>, 357 F. App'x 179 (10th Cir. 2009) — a Tenth Circuit criminal sentencing decision addressing a firearm enhancement under U.S.S.G. § 2K2.1(b)(6). The volume number is wrong. The circuit is wrong. The year is wrong. The subject matter bears no relationship whatsoever to the proposition asserted. This is not a typographical error. It is the unverified output of an AI drafting tool submitted to this Court as though it were binding legal authority.

The submission of fabricated citations to a federal court is not a technical irregularity. It is a breach of the duty of candor owed to this tribunal, an unreasonable multiplication of proceedings within the meaning of 28 U.S.C. § 1927, and an abuse of the judicial process that warrants the exercise of this Court's inherent sanctioning authority.

## STATEMENT OF FACTS

A.  <u>The First Fabrication: ECF No. 54 — "Mpala v. Segarra" (February 7, 2026)</u>

On February 7, 2026, Mr. Charles filed a letter in opposition to Plaintiff's motion to vacate, docketed as ECF No. 54. Arguing that Plaintiff's Rule 60(b)(3) motion was untimely, Mr. Charles cited the following authority at page 1: *"see* <u>Mpala v. Segarra</u>*,* 715 Fed. Appx. 84, 85 (2d Cir. 2018) (holding that plaintiff failed to bring a Rule 60(b)(1) motion within a reasonable time even though it was brought within one year)."

The genuine <u>Mpala v. Segarra</u> decision exists — but it is reported at 718 F. App'x 84 (2d Cir. 2018), not at 715 F. App'x 84 as cited by Mr. Charles. The three-digit transposition of the volume number displaced the citation from the real <u>Mpala</u> decision to <u>Johnson v. Turnbill</u>, 715 F. App'x 84 (2d Cir. 2018) — a summary order addressing a § 1983 excessive-force handcuffing claim by a pretrial detainee at Rikers Island, which has no connection to Rule 60(b), timeliness, or post-judgment relief of any kind. Westlaw's "Analyze an Opponent's Work" citation verification tool confirmed the mismatch in explicit terms, reporting: *"Citation from uploaded document:* <u>Mpala v. Segarra</u>*,* 715 Fed. Appx. 84, 85 (2d Cir. 2018) — *Citation on Westlaw:* <u>Johnson v. Turnbill</u>*,* 715 Fed. Appx. 84 (2nd Cir. 2018)."

Moreover, even the real <u>Mpala</u> decision at 718 F. App'x 84 does not support Mr. Charles's argument. <u>Mpala</u> addressed a Rule 60(b)(1) motion based on an alleged miscommunication between the plaintiff and his prior attorney — not a Rule 60(d)(3) fraud on the court claim. Ms. Nantongo's motion is brought under Rule 60(d)(3), which carries no time bar whatsoever. <u>Mpala's</u> timeliness holding is legally inapplicable to this proceeding under the very case Mr. Charles cited.

B.  <u>The Second Fabrication: ECF No. 63 — "Linkco … 357 Fed. Appx. 180" (April 17, 2026)</u>

5

On April 17, 2026, Mr. Charles filed an eighteen-page memorandum of law at ECF No. 63, opposing Plaintiff's supplemental motion to vacate. At page 9, addressing the standard for relief under Federal Rule of Civil Procedure 60(d)(3), Mr. Charles cited: "Linkco Inc., v. Naoyuki Akikusa, 357 Fed Appx. 180, 181 (2d Cir. 2010)."

Independent verification of that citation reveals that it is wrong on every verifiable axis. The genuine Second Circuit summary order in LinkCo, Inc. v. Akikusa is reported at 367 F. App'x 180 (2d Cir. 2010) — not at 357 F. App'x. The decision actually reported at 357 F. App'x 179 (2009) is United States v. Philley — a decision of the United States Court of Appeals for the Tenth Circuit, filed December 17, 2009, addressing the sentencing of Richard Wayne Philley, who pleaded guilty to possession of an unregistered shotgun and received a 64-month sentence. The Tenth Circuit in Philley affirmed the district court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for use of a firearm in connection with another felony offense. United States v. Philley addresses no issue of civil procedure, post-judgment relief, fraud on the court, or any principle relevant to the above-captioned action. In a single citation, Mr. Charles managed to misstate the volume number, the circuit, the year of decision, and the subject matter — simultaneously.

The genuine LinkCo decision does exist at 367 F. App'x 180 (2d Cir. 2010), but Mr. Charles did not cite it. He cited coordinates that belong to a Tenth Circuit criminal sentencing case decided one year earlier. The transposition of "357" for "367," combined with the wholesale displacement of the actual LinkCo decision by Philley, is structurally consistent with an AI language model that generated a plausible-sounding citation without verifying the actual content of the reporter at those coordinates.

Furthermore, the damage from the LinkCo fabrication is compounded by an additional layer of error that independently confirms the absence of any reasonable verification. Even had Mr. Charles correctly cited LinkCo at its true coordinates — 367 F. App'x 180 (2d Cir. 2010) — the proposition for which he cited it would still be wrong. The three-part test Mr. Charles attributed to LinkCo — requiring a movant to show "no other available or adequate remedy," "no fault, neglect, or carelessness," and "a recognized ground for equitable relief" — is, under LinkCo itself, the standard applicable to a Rule 60(d)(1) independent action, not a Rule 60(d)(3) fraud on the court claim. LinkCo, 367 F. App'x at 182 (attributing the three-part test to Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 662 (2d Cir. 1997)). Plaintiff's motion is brought under

6

Rule 60(d)(3). The <u>LinkCo</u> three-part test has no application to this proceeding under the very decision Mr. Charles cited. An attorney who had actually read <u>LinkCo</u> before submitting his opposition would have known this.

    C.   <u>The Pattern Confirms Willful Conduct or Reckless Indifference</u>

Two fabricated citations filed in two separate submissions over a ten-week period cannot be attributed to inadvertence. The inference of bad faith or reckless indifference is further compelled by the most remarkable feature of this record: in the very memorandum of law (ECF No. 63) that contains the fabricated <u>Philley</u> citation, Mr. Charles dedicates approximately two pages to arguing that Plaintiff's counsel has a documented history of submitting AI-generated fabricated citations to courts, expressly citing <u>Jakes v. Youngblood</u>, No. 24-cv-1608 (W.D. Pa. 2025), in which Plaintiff's counsel was sanctioned $5,000 for AI citation fabrications. An attorney who is simultaneously aware that fabricated AI citations constitute sanctionable misconduct, who argues that point at length in a court submission, and who simultaneously includes his own fabricated citation in that same submission — a citation that resolves to a Tenth Circuit criminal case — cannot credibly claim that his error was innocent or inadvertent.

**LEGAL STANDARD**

    i.   <u>The Court's Inherent Authority</u>

A court has the inherent power to sanction a party for conduct which abuses the judicial process. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The Court may impose sanctions under its inherent powers against a party or attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Ransmeier v. Mariani</u>, 718 F.3d 64, 68 (2d Cir. 2013) (quoting <u>Chambers</u>, 501 U.S. at 45-46). "Because of their very potency, inherent powers must be exercised with restraint and discretion." <u>Chambers</u>, 501 U.S. at 44. *See also* <u>Heaston v. City of New York</u>, No. 19-CV-5569 (PKC) (VMS), 2022 U.S. Dist. LEXIS 10776, at 17-18 (E.D.N.Y. Jan. 20, 2022).

"Sanctionable conduct must be proven by clear and convincing evidence, and the district court must make a specific finding of bad faith." <u>Amerisource Corp. v. RX USA Int'l Inc.</u>, No. 02-CV-2514, 2010 U.S. Dist. LEXIS 67108, 2010 WL 2730748, at 5 (E.D.N.Y. July 6, 2010) (citing <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 136 (2d Cir. 1998)). "Inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." <u>Wolters Kluwer Fin. Servs. Inc.</u>

v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). "A claim lacks colorable basis when it is utterly devoid of legal or factual basis." Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 367 (E.D.N.Y. 2013). Heaston, 2022 U.S. Dist. LEXIS 10776, at 17-18.

Both prongs of the Wolters Kluwer standard are satisfied here. Mr. Charles's fabricated citations are entirely without color: a citation that resolves to United States v. Philley — a Tenth Circuit criminal sentencing decision addressing a firearm enhancement under U.S.S.G. § 2K2.1(b)(6) — is utterly devoid of any legal or factual basis for the Rule 60(d)(3) proposition for which it was offered. And the improper purpose prong is established by the most remarkable feature of this record: in the same memorandum of law containing the fabricated Philley citation, Mr. Charles devotes two pages to arguing that Plaintiff's counsel should be sanctioned for the identical conduct — submitting AI-generated fabricated citations to a federal court. An attorney who simultaneously condemns AI citation fabrication as sanctionable misconduct and submits his own unverified AI-generated citation in that same filing cannot satisfy the clear and convincing evidence standard that his conduct was anything other than bad faith or its functional equivalent.

ii.    28 U.S.C. § 1927

Section 1927 provides that any attorney who "unreasonably and vexatiously" multiplies the proceedings in any case "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In the Second Circuit, § 1927 sanctions require a showing that counsel's conduct was "entirely without color" and taken in bad faith. Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 (2d Cir. 2018). Forcing opposing counsel to independently identify fabricated citations, locate the actual decisions at those coordinates, analyze their content, obtain citation verification reports, and prepare a sanctions motion — on two separate occasions, in two separate filings — constitutes precisely the kind of unreasonable and vexatious multiplication of proceedings that § 1927 is designed to address. The excess costs and attorneys' fees generated by Mr. Charles's failure to perform basic citation verification are recoverable under this provision.

iii.   Federal Rule of Civil Procedure 11

Rule 11(b) states, in part, that "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1)it is not being presented for any

8

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2)the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3)the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. At the bare minimum, this obligation requires litigants to carefully review every statement and citation drafted by AI to ensure that it is legally and factually correct, particularly given that AI tools make it easier for counsel to submit voluminous briefing without subjecting each cited authority to meaningful verification. *See* Thornock v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, No. 25-CV-56, 2025 U.S. Dist. LEXIS 130690, 2025 WL 1900314, at 4 n.5 (E.D. Va. July 9, 2025); Perez v. Evans, No. 24-CV-356 (VSB) (SN), 2025 U.S. Dist. LEXIS 188902, at 9 (S.D.N.Y. Sep. 25, 2025).

Citations produced by AI that "conform to the Bluebook but ultimately are not real" are described by courts as "hallucinated." Benjamin v. Costco Wholesale Corp., 779 F. Supp. 3d 341, 342 (E.D.N.Y. 2025). At least two of the citations contained in Mr. Charles's filings in this action appear to be precisely that — hallucinated citations that carry the superficial appearance of properly formatted legal authority but, upon verification, resolve to unrelated decisions from other circuits addressing wholly different areas of law. Perez v. Evans, 2025 U.S. Dist. LEXIS 188902, at 9.

Mr. Charles failed to meet his obligations under Rule 11. A citation to a Tenth Circuit criminal sentencing opinion — United States v. Philley, 357 F. App'x 179 (10th Cir. 2009) — cited as Second Circuit civil procedure authority on fraud on the court is not a legal contention warranted by existing law. It is a contention utterly devoid of legal basis, and the failure to independently verify it before filing constitutes precisely the failure of reasonable inquiry that Rule 11(b) is designed to prevent. Perez v. Evans, 2025 U.S. Dist. LEXIS 188902, at 9; Benjamin, 779 F. Supp. 3d at 342.

## ARGUMENT

I. THE TWO FABRICATED CITATIONS WARRANT SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY

   a.  The Fabrications Are Established Beyond Dispute

The fabrication of each citation is not a matter of reasonable dispute, and both are established by independent documentary evidence. With respect to ECF No. 54, Westlaw's citation

9

verification tool — applied directly to Mr. Charles's own filing — returned an explicit flag identifying "Mpala v. Segarra, 715 Fed. Appx. 84, 85 (2d Cir. 2018)" as resolving to "Johnson v. Turnbill, 715 Fed. Appx. 84 (2nd Cir. 2018)," a § 1983 handcuffing case involving a Rikers Island detainee. No amount of charitable reading converts a § 1983 handcuffing summary order into authority on the timeliness of Rule 60(b) motions. The real Mpala v. Segarra decision, located at 718 F. App'x 84 (2d Cir. 2018) — a volume number three digits higher than what Mr. Charles cited — involves a Rule 60(b)(1) miscommunication claim that is categorically inapplicable to a Rule 60(d)(3) fraud on the court motion, which carries no time bar. A single Westlaw search of the volume and page cited by Mr. Charles — a task requiring less than thirty seconds — would have returned Johnson v. Turnbill and put him on immediate notice that his citation was wrong.

With respect to ECF No. 63, the decision at 357 F. App'x 179 is United States v. Philley (10th Cir. 2009) — a criminal sentencing appeal with no civil procedure content of any kind. The genuine LinkCo decision is at 367 F. App'x 180 (2d Cir. 2010) — a different volume, a different circuit, and a different year. Moreover, even the correct LinkCo decision does not support the proposition for which Mr. Charles cited it: the three-part test stated in LinkCo at page 182 is the standard for a Rule 60(d)(1) independent action, not a Rule 60(d)(3) fraud on the court claim. LinkCo, 367 F. App'x at 182. Plaintiff's motion is brought under Rule 60(d)(3). The proposition Mr. Charles asserted is wrong under the very case he cited — whether cited at the fabricated coordinates or the correct ones.

b. Bad Faith Is Compelled by the Totality of Circumstances

The bad faith inquiry does not require direct evidence of subjective intent, and the totality of circumstances here compels its finding. The misconduct is not a single isolated error but a pattern: two separate fabricated citations across two independent submissions filed ten weeks apart, each citing a real reporter location belonging to an unrelated decision, and each assigning to that location a legal proposition that the actual decision does not contain. This structural consistency is the hallmark of unverified AI output, not the product of ordinary human error.

The most compelling circumstantial evidence of bad faith is the very document in which the second fabrication appears. In his April 17, 2026, opposition at ECF No. 63, Mr. Charles devotes two pages to the argument that Plaintiff's counsel is unfit because of a documented history of AI-generated citation fabrication, citing Jakes v. Youngblood and describing in detail the $5,000 sanction imposed on Plaintiff's counsel for that conduct. That Mr. Charles chose to make

10

this argument while simultaneously submitting a citation that resolves to a Tenth Circuit criminal sentencing case — without any intervening verification step — admits of only two explanations: he knew his citation was fabricated, or he was so recklessly indifferent to its accuracy that his conduct is the functional equivalent of knowing misrepresentation. Either way, sanctions are warranted.

The bad faith inference is further reinforced by the underlying context in which these submissions arise. Mr. Charles is not a neutral third party caught in an error. He is the former attorney who, according to certified forensic document examiner Kathy S. Carlson, C.F.D.E., C.Q.D.E., forged Ms. Nantongo's electronic signature on four court-related documents spanning nearly three years — including the Acceptance of Rule 68 Offer of Judgment filed directly with this Court (Dkt. 42) — without his client's knowledge or consent, retained $12,000 in fees paid directly by Defendant from the resulting $20,000 judgment while Ms. Nantongo received only $8,000 net from the court-filed judgment, and arranged for his non-lawyer brother Ralph Charles to inform Ms. Nantongo by telephone that her case had been "settled." An attorney in Mr. Charles's position has every incentive to obstruct the Court's resolution of the underlying motion and every reason to submit opposition papers without subjecting them to the careful verification that candor to the tribunal demands.

c. Courts Have Consistently Imposed Sanctions for This Conduct, and This Court Should Do the Same

Courts across the country have imposed meaningful sanctions on attorneys and parties who submit AI-generated fabricated citations, recognizing that unverified reliance on AI output is incompatible with the professional obligations of anyone who presents papers to a federal court. In Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 466-67 (S.D.N.Y. 2023), Judge Castel imposed a $5,000 monetary sanction jointly and severally on the respondents for submitting citations to fake opinions — authority that courts have since cited consistently as the baseline standard for AI citation sanctions. The Eastern District of New York has recently followed suit: in Yaroshevsky v. Karlin, No. 25-CV-2747 (DG) (SDE), 2026 U.S. Dist. LEXIS 37943, at 33-34 (E.D.N.Y. Feb. 23, 2026), the court found that fabricated AI citations were sufficiently egregious to warrant monetary sanctions, and specifically recommended that defendants be granted leave to file a formal fee application to recover fees incurred in evaluating and verifying the offending citations — precisely because "defense counsel spent a significant amount of time evaluating and verifying

11

Plaintiff's citations and authorities as a result of his refusal to admit and correct the citations" Id. at 33.

The Yaroshevsky court's fee-shifting rationale applies with full force here. Plaintiff's counsel has been required, on two separate occasions, to identify Mr. Charles's fabricated citations, independently verify them in Westlaw and LexisNexis, retrieve and analyze the actual decisions sitting at the fabricated coordinates, obtain citation verification reports, and prepare the instant motion — all because Mr. Charles submitted unverified AI output and, rather than admitting the error when Plaintiff challenged the first fabrication, proceeded to file a second brief containing another fabricated citation. Unlike the pro se litigant in Yaroshevsky — where the court declined to impose a separate monetary sanction considering the plaintiff's unrepresented status and limited financial means — Mr. Charles is a licensed attorney of record who has practiced law for years and holds himself out to the public as competent to represent others in federal court. The equitable considerations that counseled leniency toward a pro se litigant in Yaroshevsky have no application to a member of the bar who was aware, as he himself argued in ECF No. 63, that AI citation fabrication is sanctionable misconduct. Yaroshevsky, 2026 U.S. Dist. LEXIS 37943, at 33-34; Mata, 678 F. Supp. 3d at 466-67.

Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff leave to file a formal fee application quantifying the attorneys' fees and costs incurred in connection with ECF Nos. 54 and 63, that Mr. Charles be directed to respond to that application with evidence of his ability to pay, and that any legal authority cited by Mr. Charles in response to the fee application be accompanied by an exhibit containing electronic copies of all cited authorities — the precise prophylactic measure endorsed by the Yaroshevsky court to prevent further AI citation fabrication. Yaroshevsky, 2026 U.S. Dist. LEXIS 37943, at 34.

## II. SANCTIONS UNDER 28 U.S.C. § 1927 ARE INDEPENDENTLY WARRANTED

The fabricated citations unreasonably and vexatiously multiplied the proceedings in this action. Plaintiff's counsel was required, on two separate occasions, to independently identify the suspect citations, run searches on Westlaw and LexisNexis to determine whether the cited cases exist, retrieve the actual decisions sitting at the fabricated reporter coordinates, analyze those decisions to confirm their irrelevance, obtain and interpret the Westlaw citation verification report, and ultimately prepare this motion. None of that work would have been necessary had Mr. Charles performed even the most basic citation verification before filing. The excess attorneys' fees and

12

costs that Plaintiff has incurred as a direct result of Mr. Charles's conduct are recoverable under § 1927, and the Court should order Mr. Charles to satisfy them personally.

## III. THE COURT SHOULD REFER THIS MATTER TO THE GRIEVANCE COMMITTEE AND EXERCISE ITS DISCIPLINARY AUTHORITY

The sanctions available under this Court's inherent authority, Rule 11, and 28 U.S.C. § 1927 address the harm caused to this Court and to opposing parties. They do not address the broader harm to the bar and to the public that flows from an attorney who submits fabricated citations to a federal tribunal — not once, but twice, in successive filings. Federal courts possess the inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with the ethical standards imposed by the court. In re Snyder, 472 U.S. 634, 645 n.6 (1985). As the Southern District of New York recognized in Suggs v. Capital Cities/ABC, Inc., No. 86 Civ. 2774 (LBS), 1990 U.S. Dist. LEXIS 4774, at 3-4 (S.D.N.Y. Apr. 24, 1990), this district has exercised that authority by adopting a rule authorizing disciplinary action against any attorney "found guilty by clear and convincing evidence . . . of conduct violative of the Codes of Professional Responsibility of the American Bar Association or the New York Bar Association from time to time in force," with such disciplinary action to be imposed by the Committee on Grievances of the Board of Judges following "notice and a hearing" pursuant to the applicable General Rules.

An attorney who submits fabricated case citations to a federal court in two successive filings engages in conduct that implicates New York Rule of Professional Conduct 3.3(a)(1), which prohibits a lawyer from knowingly making a false statement of law to a tribunal, and Rule 8.4(c), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. The submission of a citation purporting to be Second Circuit authority on Rule 60(d)(3) that, upon verification, resolves to a Tenth Circuit criminal sentencing opinion — and the simultaneous submission of a citation purporting to be Second Circuit authority on Rule 60(b) timeliness that resolves to a § 1983 handcuffing case — are precisely the kind of false statements of law to a tribunal that Rule 3.3(a)(1) is designed to prevent. Whether that conduct warrants professional discipline beyond the monetary and non-monetary sanctions available to this Court is a determination that lies with the Committee on Grievances of the Board of Judges and, where appropriate, the Grievance Committee for the Second and Eleventh Judicial Districts. Suggs, 1990 U.S. Dist. LEXIS 4774, at 3-4. This Court should refer the matter so that the appropriate disciplinary body may make that determination after notice and a hearing.

13

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Olivia Nantongo respectfully requests that this Court issue an Order:

1. Imposing monetary sanctions on Fred V. Charles, Esq. and Charles Law, P.C. in an amount sufficient to deter future misconduct and to compensate Plaintiff for the reasonable attorneys' fees and costs incurred in identifying and responding to the fabricated submissions at ECF Nos. 54 and 63.
2. Striking or directing the Court to disregard all arguments in ECF Nos. 54 and 63 that are supported exclusively by fabricated or non-existent authority.
3. Directing Fred V. Charles, Esq. to file a sworn declaration identifying all AI-based tools used in the preparation of any court submission in this action and confirming the specific verification steps taken with respect to each cited authority.
4. Directing Mr. Charles to certify, in all future filings in this District for a period of two years, that all legal citations have been independently verified in Westlaw or LexisNexis and that no AI-generated citation has been included without such verification.
5. Referring this matter to the Grievance Committee for the Second and Eleventh Judicial Districts; and
6. Granting such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
April 22, 2026

Respectfully submitted,

/s/Tyrone A. Blackburn, Esq.
Tyrone A. Blackburn, Esq.
Counsel for Plaintiff

14